**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| MAGNUM MINERALS, L.L.C., MAGNUM BLUE RIBBON FEEDS, INC., GEARN OFFSHORE, INC., and TIM A. GEARN, Individually, | § § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | |
| HOMELAND INSURANCE COMPANY OF NEW YORK, MARK COLLIER, CONSUELO AYALA, Individually and as the Representative of the Estate of PEDRO MEJIA BELTRAN and as Next Friend and Natural Mother of Minors, EMA, JYMA, and CBM, and ELGIN B. ALLEN, Jr., AIM ASSOCIATION INSURANCE MANAGEMENT, INC., TERRY M. FERRELL, ONEBEACON INSURANCE GROUP, ONEBEACON ACCIDENT GROUP, ONEBEACON AMERICA INSURANCE COMPANY, ONEBEACON INSURANCE COMPANY, and TRADERS & GENERAL INSURANCE COMPANY, | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:12-cv-00103-J |
| Defendants. | § § | |

**ONEBEACON DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**
**UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Respectfully submitted,


*/s/ Michael Keeley*
MICHAEL KEELEY
State Bar No. 11157800
JOHN R. RIDDLE
State Bar No. 16890200
CARLA CRAPSTER
State Bar No. 24065094
STRASBURGER & PRICE, LLP.
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:   (214) 651-4300
Facsimile:    (214) 651-4330

ATTORNEYS FOR DEFENDANTS
HOMELAND INSURANCE COMPANY OF
NEW YORK, ONEBEACON INSURANCE
GROUP, ONEBEACON ACCIDENT GROUP,
ONEBEACON AMERICA INSURANCE
COMPANY, ONEBEACON INSURANCE
COMPANY, and TRADERS & GENERAL
INSURANCE COMPANY

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................. 3

III.  RULE 12(B)(6) STANDARD .............................................................. 5

IV.  MOTION TO DISMISS THE COVERAGE CLAIMS OF
     MAGNUM MINERALS, L.L.C. .......................................................... 5

     A.  Minerals Cannot Maintain a Claim for Coverage Under an
         Insurance Policy that it Did Not Buy or Claims for Breach
         of a Duty that Only Exists Between an Insurer and an Insured ...................... 6

     B.  Minerals Lacks Standing to Sue for
         Enforcement of a Policy It Did Not Buy ........................................................ 8

V.  MOTION TO DISMISS THE CLAIMS BROUGHT UNDER CHAPTER 981 ........... 9

     A.  The Plaintiffs Lack Standing to Bring Suit Under Chapter 981,
         Barring This Court from Hearing the Plaintiffs' Claim .................................. 10

     B.  Sections 981.004 and 981.005 Do Not Support a
         Private Cause of Action ................................................................................. 13

     C.  Even if Chapter 981 Supported a Private Cause of Action,
         The Plaintiffs Bring Such a Claim Prematurely ........................................... 15

VI.  MOTION TO DISMISS THE CONSPIRACY CLAIM: COUNT 7 ........................... 18

VII. CONCLUSION ................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abatement Inc. v. Williams*,
 324 S.W.3d 858 (Tex. App. – Houston [14th Dist.] 2010, pet. denied) ................... 14

*Arnold v. Nat'l County Mut. Fire Ins. Co.*,
 725 S.W.2d 165 (Tex. 1987) ...................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
 127 S. Ct. 1955 (2007) ............................................................................................... 5

*Bridge v. Phoenix Bond & Indem. Co.*,
 553 U.S. 639 (2008) ................................................................................................. 12

*Brooks v. Chevron USA, Inc.*,
 No. 13-05-029-CV, 2006 Tex. App. LEXIS 4479 (Tex. App. -- Corpus Christi
 May 25, 2006, pet. denied) ...................................................................................... 18

*Brown v. De La Cruz*,
 156 S.W.3d 560 (Tex. 2004) .................................................................................... 14

*City of The Colony v. N. Tex. Mun. Water Dist.*,
 272 S.W.3d 699 (Tex. App. -- Fort Worth 2008, pet. denied) .................................... 6

*Collins v. Morgan Stanley Dean Witter*,
 224 F.2d 496 (5th Cir. 2000) ..................................................................................... 5

*Comer v. Murphy Oil USA*,
 585 F.3d 855 (5th Cir. 2009) ................................................................................... 10

*DaimlerChrysler Corp. v. Inman*,
 252 S.W.3d 299 Tex. 2008 ...................................................................................... 17

*Heckman v. Williamson Cnty.*,
 369 S.W.3d 137 (Tex. 2011) ............................................................................... 8, 10

*In re Katrina Canal Breaches Litig.*,
 495 F.3d 191 (5th Cir. 2007) ..................................................................................... 5

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ................................................................................................. 10

*M.D. Anderson Cancer Ctr. v. Novak*,
 52 S.W.3d 704 (Tex. 2001) .......................................................................... 9, 11, 12

*Martin v. Clinical Pathology Labs.*,
   343 S.W.3d 885 (Tex. App. – Dallas 2011, pet. denied) .......................................... 14

*Nautilus Ins. Co. v. Nicky & Claire's Day Care, Inc.*,
   No. EP-08-CV-297-DB, 2009 U.S. Dist. LEXIS 129486 (W.D. Tex. Aug. 13.
   2009).............................................................................................................. 8, 17

*Patterson v. Planned Parenthood*,
   971 S.W.2d 439 (Tex. 1998) ...................................................................... 16

*Stine v. Stewart*,
   80 S.W.3d 586 (Tex. 2002) ........................................................................ 7

*Summit Props., Inc. v. Hoechst Celanese Corp.*,
   214 F.3d 556 (5th Cir. 2000), reversed .................................................. 12

*Tilton v. Marshall*,
   925 S.W.2d 672 (Tex. 1996) ...................................................................... 18

*Witkowski v. Brian, Fooshee and Yonge Props.*,
   181 S.W.3d 824 (Tex. App. – Austin 2005, no pet.)................................ 7, 13, 14, 15

## STATUTES

Chapter 101 of the Code ................................................................................ 8

Chapter 981 of the Code ...........................................2, 4, 8, 9, 10, 11, 14, 15, 16, 18, 19

Tex. Ins. Code § 31.002(3)............................................................................ 15

Tex. Ins. Code § 31.021(a)............................................................................ 15

Tex. Ins. Code § 101.103 .............................................................................. 15

Tex. Ins. Code § 101.201(a)...................................................................... 2, 8, 9

TEX. INS. CODE § 981.001 ............................................................................ 11, 15

Tex. Ins. Code § 981.004 .............................................9, 10, 11, 12, 13, 15, 16, 17, 18

Tex. Ins. Code § 981.005 ............................................................. 9, 11, 13, 15, 16, 17

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 5

Defendants Homeland Insurance Company of New York, OneBeacon Insurance Group, LLC (improperly identified by Plaintiffs as OneBeacon Insurance Group), OneBeacon Accident Group (not a legal entity), OneBeacon America Insurance Company, OneBeacon Insurance Company, and Traders & General Insurance Company (collectively, the "OneBeacon Defendants"), file this Brief in Support of Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (the "Motion") and would respectfully show the Court as follows:

## I.
## <u>INTRODUCTION</u>

This Motion to Dismiss asks the Court to decide two narrow issues.  First, an entity that has not purchased any insurance policy from an insurer has sued that insurer for coverage.  Has the entity failed to state a claim upon which relief can be granted?  Second, may the Plaintiffs sue the OneBeacon Defendants for engaging in conduct that did not injure them, merely because that conduct allegedly violated a section of the Texas Insurance Code that does not entitle private citizens to enforce it or exist to protect private citizens?

An employee of Magnum Minerals, L.L.C. ("Minerals") died in a workplace accident.  Minerals, among others, has been sued by the employee's kin, and Minerals demands that Homeland Insurance Company of New York ("Homeland") defend it in that lawsuit and indemnify it for any judgment arising out of it.  But Homeland never issued an insurance policy of any kind to Minerals, a fact that is clear from the face of the Plaintiffs' pleadings.  Thus, even if all the facts that the Plaintiffs allege are true, Minerals' coverage claims must fail.

The Plaintiffs also bring claims, including a putative class action, under Section 101.201 and Chapter 981 of the Texas Insurance Code (the "Code").  The OneBeacon Defendants move to dismiss all claims brought under Chapter 981.  Chapter 981 of the Code authorizes certain out-of-state insurers (referred to as "eligible surplus lines insurers") to practice in Texas, but only under certain circumstances.  Texas forbids an eligible surplus lines insurer from issuing policies in Texas unless there is a diligent effort made to determine that an in-state (or "authorized") insurer could not provide the full amount of the kind and class of insurance that the eligible surplus lines insurer offers.  Plaintiffs argue that Homeland, which is an eligible surplus lines insurer, issued policies to Magnum Blue Ribbon Feeds, Inc. ("Blue Ribbon") and Gearn Offshore, Inc. ("Gearn Offshore") without first attempting to find an authorized Texas insurer who could provide coverage.  Even if these allegations are true, the Plaintiffs may not maintain a cause of action on the grounds that an insurer violated Chapter 981 for three reasons.  First, in Texas, the violation of a statute gives rise to a cause of action only if the statute contains language that expressly allows plaintiffs to enforce it.  Chapter 981 does not contain such language.  Second, a violation of Chapter 981 does not necessarily injure anyone, and the Plaintiffs do not plead that the alleged violation at issue here caused an injury.  Under both Texas and federal law, a plaintiff that has suffered no injury lacks standing to bring suit or maintain a class action on behalf of others. Finally, a violation of Chapter 981 entitles an insured to one remedy: enforcement of an insurance policy as written without application of exclusions.  The Plaintiffs do not plead that Homeland has attempted to apply any exclusions, making it premature to hear a dispute over whether this remedy applies here.

## II.
## FACTUAL BACKGROUND

This case began as an insurance coverage dispute.  Blue Ribbon and Gearn Offshore purchased "nonsubscriber" insurance policies from Homeland (the "Policies").[1] Minerals, which is related to Blue Ribbon and Gearn Offshore, never purchased any coverage from Homeland; indeed, it never requested a policy from Homeland or any of the other OneBeacon Defendants.[2]  An employee of Minerals, Pedro Mejia ("Mejia"), was tragically killed in the course of his employment when a salt storage silo collapsed and crushed him.[3]  Mejia's kin sued Minerals, Blue Ribbon, and Gearn Offshore, among others, in state court (the "Underlying Suit").[4]  When this lawsuit began, the core dispute was over whether Homeland owed a duty to defend Blue Ribbon, Gearn Offshore, and Minerals in the Underlying Suit and indemnify them for any loss resulting therefrom. Homeland contends that it does not owe a duty to defend or indemnify the Plaintiffs because it never issued a policy to Minerals and, as to Blue Ribbon and Gearn Offshore, it agreed to insure only those losses arising out of injuries to *their* employees. Presumably because they recognize the fallacy of their coverage claims, the Plaintiffs now seek to dramatically expand the scope of the parties' dispute.

The Plaintiffs now contend that all of the OneBeacon Defendants (which are all related to Homeland) violated the Code by issuing the Policies to Gearn Offshore and Blue Ribbon.[5]  Homeland is an eligible surplus lines insurer, which means that it is not "admitted" to practice in the insurance business in Texas, but is nonetheless allowed to

---

[1] Plaintiffs' Fourth Amended Petition and Class Action Petition ("Live Petition") at ¶ 23.
[2] *See generally, Id.*
[3] *Id.* ¶ 24.
[4] *Id.*
[5] *Id.* ¶ 58-60.

issue surplus lines policies that comply with the requirements of Chapter 981 of the Code.  The primary requirement of Chapter 981 is that eligible surplus lines insurers may not insure a risk unless a diligent effort has been made to determine that an authorized insurer could not provide the same kind and class of insurance for that risk. The Plaintiffs contend that no diligent effort was made to determine whether an authorized insurer could have provided the same kind and class of insurance that the Policies do.[6]  The Plaintiffs also sue insurance agents Mark M. Collier ("Collier"), Terry M. Ferrell ("Ferrell"), AIM Association Insurance Management, Inc. ("AIM"), and Elgin B. Allen ("Allen") (together, the "Broker Defendants"), for allegedly helping to place the Policies with Homeland before making a diligent effort to place insurance with an authorized insurer.[7]  The Plaintiffs also contend that the OneBeacon Defendants and the Broker Defendants routinely violate the Code in this manner, and now purport to sue on behalf of a class of all persons and entities that have purchased nonsubscriber coverage from Homeland through Ferrell, AIM, and Allen since 2005 (the "Class").[8]  The Plaintiffs seek injunctive relief on behalf of themselves and the Class that will enjoin Homeland from enforcing any policies it issued when coverage from an admitted carrier was available, prevent Homeland from issuing any new nonsubscriber policies when an admitted carrier is available, and require Homeland to attempt to secure coverage for current insureds from admitted carriers.[9]

---

[6] *Id.*
[7] *Id* ¶ 59.
[8] *Id.* at ¶ 30.
[9] *Id.* at 70-71.  This motion addresses only the legal sufficiency of the claims of the named plaintiffs. Plaintiffs have not filed a motion for class certification, and certification-related issues and other issues pertaining to the putative class will be addressed in briefing if and when a motion for class certification is filed.

### III.
### RULE 12(b)(6) STANDARD

A motion to dismiss tests the legal sufficiency of the claims alleged in the complaint.   *See* FED. R. CIV. P. 12(b)(6).   As a result, all well-pleaded facts in the complaint are taken as true.   *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).   But the plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal for failure to state a claim.   *Collins v. Morgan Stanley Dean Witter*, 224 F.2d 496, 498 (5th Cir. 2000).   As the Supreme Court explained in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1959 (2007), "[w]hile a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Moreover, to survive a Rule 12(b)(6) motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.   "The plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Id.*

### IV.
### MOTION TO DISMISS THE COVERAGE CLAIMS OF MAGNUM MINERALS, L.L.C.

The live pleading in this case, the Plaintiffs' Fourth Amended Petition and Class Action Petition (the "Live Petition"), pleads that Homeland issued insurance policies to Gearn Offshore and Blue Ribbon.[10]   The Live Petition does not plead that Homeland issued any policy to Minerals.   In fact, the Plaintiffs have sued certain of the Broker

---

[10] *Id.* ¶ 23.

Defendants for not obtaining an insurance policy for Minerals.[11]  It is, therefore, clear from the face of the Live Petition that Minerals did not purchase coverage of any kind from Homeland.  Counts 1, 3, 4, 5, 6, and 8 of the Live Petition all seek to enforce a policy that Minerals never bought, or allege failure to comply with a duty that does not exist outside of an insurer-insured relationship.  Minerals cannot maintain any of these Counts because it has failed to plead an element essential to each one: that it purchased a policy.

> **A.    Minerals Cannot Maintain a Claim for Coverage Under an Insurance Policy that it Did Not Buy or Claims for Breach of a Duty that Only Exists Between an Insurer and an Insured**

In Count 1, the Plaintiffs allege that Homeland breached the insurance contracts issued to Gearn Offshore and Blue Ribbon.  It is plain from the face of the Live Petition that Minerals and Homeland never entered into a contract.  Thus, between Minerals and Homeland, there is no contract that Homeland could have breached.  Minerals cannot sue Homeland for breach of contract.  *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 739 (Tex. App. -- Fort Worth 2008, pet. denied) (listing the existence of a valid contract as one of the essential elements of a breach of contract claim under Texas law).  To the extent that Minerals seeks relief under Count 1, its claim must be dismissed.

In Count 3, the Plaintiffs allege that Homeland and OneBeacon Insurance Group violated the Code by not promptly reimbursing Gearn for attorney's fees that he incurred in defending the Underlying Suit brought by Mejia's kin.  The Plaintiffs argue that Homeland knew that the Policies required reimbursement of these attorney's fees, but

---

[11] *Id.* ¶42 ("Collier breached his duty to procure adequate insurance for Magnum Minerals and its employees.").

nonetheless refused coverage, violating the Code.  Minerals, a stranger to the Policies and an entity that never bought a policy from Homeland, cannot sue Homeland for failing to timely honor a promise made to another.  *Witkowski v. Brian, Fooshee and Yonge Props.,* 181 S.W.3d 824, 831 (Tex. App. – Austin 2005, no pet.) ("A third party to a contract may sue on that contract only if the contracting parties intended to benefit that third party and entered into the contract directly for the third party's benefit.") (quoting *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)).  Count 3 must therefore be dismissed as to Minerals.

In Count 4, the Plaintiffs allege that Homeland breached the common-law duty of good faith and fair dealing by not defending the Plaintiffs in the Underlying Suit and by failing to agree to indemnify them for any judgment arising therefrom.  This claim cannot stand as to Minerals because Homeland does not owe Minerals a duty of good faith and fair dealing.  Under Texas law, this is a duty that arises only because of the special relationship between insurers and insureds.  *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987).  But Homeland is not Minerals' insurer.  The duty of good faith and fair dealing does not exist between Homeland and Minerals, and Minerals cannot sue for breach of a nonexistent duty.

In Count 8, the Plaintiffs seek a judicial declaration that Homeland has a duty to defend them in the Underlying Suit and indemnify them for any judgment arising therefrom.  The Plaintiffs contend that this duty arises out of the Policies.  Again, because it is clear from the face of the Live Petition that the Policies were issued to Gearn Offshore and Blue Ribbon, not Minerals, Homeland does not owe Minerals a duty

to defend or indemnify it.  Minerals is entitled to no relief under Count 8, even if all the facts alleged therein are true.

### B.    Minerals Lacks Standing to Sue for Enforcement of a Policy It Did Not Buy

In Count 5, the Plaintiffs allege that the OneBeacon Defendants violated Chapter 101 of the Code by engaging in unauthorized insurance.  As a result, the Plaintiffs argue, "Homeland is therefore precluded from enforcing any contractual rights or exclusions to coverage under section 101.201(a) of the Texas Insurance Code . . . ."  In Count 6, the Plaintiffs allege that the OneBeacon Defendants issued the Policies in violation of Chapter 981 of the Code, entitling the Plaintiffs to an injunction preventing Homeland from enforcing the Policies.  Thus, the requested relief in both Counts 5 and 6 is an injunction preventing Homeland from enforcing the Policies.

Minerals lacks standing to seek an injunction preventing enforcement of the Policies.  A plaintiff has standing to sue only if it establishes that it has suffered a concrete injury that will be redressed by the requested relief.  *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154-55 (Tex. 2011).  Under Texas law, even if Homeland violated Chapter 981, Minerals is not entitled to any relief.  A Chapter 981 violation entitles an insured to one remedy:  enforcement of the policy as written.  *Nautilus Ins. Co. v. Nicky & Claire's Day Care, Inc.*, No. EP-08-CV-297-DB, 2009 U.S. Dist. LEXIS 129486, at *39 (W.D. Tex. Aug. 13. 2009)  (holding that while an insurer may be unable to assert defenses and exclusions due to a violation of Chapter 981, this entitled the insured only to enforce the policy as written, not to "rewrite" the policy and obtain more coverage than it purchased).  Enforcement of the Policies as written entitles Minerals to

no relief because Minerals is a stranger to the Policies.  Thus, Minerals is not entitled to the relief requested in Counts 5 and 6.[12]

### V.
### <u>MOTION TO DISMISS THE CLAIMS BROUGHT UNDER CHAPTER 981</u>

The Plaintiffs cannot maintain Count 6 for violation of Section 981.004 or the class action asserted in Count 9 under Section 981.005 for three reasons.  First, the named Plaintiffs lack standing to bring suit under Chapter 981 because they have suffered no injury from Homeland's alleged violation of Section 981.004.  A plaintiff that has not suffered a concrete injury lacks standing to bring a suit in both Texas and federal courts.  Second, Chapter 981 does not authorize a private citizen to enforce it or seek redress when an insurer violates it.  Third, it is premature to hear a claim that Section 981.005 should enjoin Homeland from enforcing the Policies because Homeland has not yet attempted to enforce the Policies and may well never do so.  These three reasons make clear that the named Plaintiffs lack standing to bring suit under Chapter 981.  Under Texas law, "a named plaintiff's lack of individual standing . . . deprives the court of subject matter jurisdiction over the plaintiff's individual claims and claims on behalf of a class."  *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 711 (Tex. 2001).  Thus, the named Plaintiffs' lack of standing forbids them from bringing suit on their own behalf and on behalf of the putative class.

---

[12] The Live Petition is long and disjointed.  Count 5 does not plead that the following provision in Section 101.201 applies:  "A person who in any manner assisted directly or indirectly in the procurement of the contract is liable to the insured for the full amount of a claim or loss under the terms of the contract if the unauthorized insurer fails to pay the claim or loss."  TEX. INS. CODE § 101.201(a).  But paragraph 28 of the Live Petition suggests that the Plaintiffs may have intended to assert a claim under this language.  If so, this claim must also fail as to Minerals.  This provision provides relief in the form of liability for the amount of a claim "under the terms of the contract."  Here, there is no contract.  Thus, any claim under this provision of Section 101.201 must fail as to Minerals, as well.

### A.   The Plaintiffs Lack Standing to Bring Suit Under Chapter 981, Barring This Court from Hearing the Plaintiffs' Claim

#### 1.   *Elements Required to Prove Standing*

When litigants present a question of standing in a diversity case, "plaintiffs must satisfy both state and federal standing requirements." *Comer v. Murphy Oil USA*, 585 F.3d 855, 861 (5th Cir. 2009).   In Texas, only one standing inquiry is necessary because Texas law mirrors federal law on standing.   To establish federal standing, plaintiffs bear the burden of establishing three elements: (1) that they have suffered an injury in fact, (2) that the injury is "fairly traceable" to the defendants' actions, and (3) that the injury will "likely . . . be redressed by a favorable decision.   *Id.* at 862 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   The plaintiff has the burden of proving each of these elements "in the same way as any other matter on which the plaintiff bears the burden of proof."   *Id.*   Texas law is in accord.   *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154-55 (Tex. 2011) (listing the same three elements of standing, citing federal law in support, and noting that Texas's test "parallels the federal test for Article III standing").   The Plaintiffs cannot satisfy the first element of this three-pronged test.

#### 2.   *Even if a Violation of Section 981.004 had Occurred, Plaintiffs Have Not Alleged that Such a Violation Caused any Injury*

To satisfy the first element of the three-pronged test for standing, a plaintiff must show that it has suffered "a concrete and particularized, actual or imminent, not hypothetical" injury.   *Heckman*, 369 S.W.3d at 155.   Here, the alleged "injury" in Counts 6 and 9 of the Live Petition is a violation of Section 981.004 of the Code.   But an insurer may violate Section 981.004 without causing an injury, and the Plaintiffs do not plead

that any injury arose out of the alleged violation.  Under Texas law, such a violation is not an "injury" that supports standing.  *Novak*, 52 S.W.3d at 707-08.

Section 981.004 provides that an eligible surplus lines insurer (like Homeland) may offer surplus lines insurance only if "the full amount of required insurance cannot be obtained, after a diligent effort, from an insurer authorized to write and actually writing that kind and class of insurance in this state."  TEX. INS. CODE § 981.004(a)(1).  If an insurer "intentionally and materially" violates this statute, Section 981.005 forbids the eligible surplus lines insurer from enforcing the policy issued in violation of Section 981.004.

Though Section 981.005 penalizes a violation of Section 981.004, this does not mean that a violation of Section 981.004 causes an injury to insureds that Section 981.005 is meant to cure.  In fact, Section 981.001 states that the purpose of Chapter 981 is to protect *insurers* and the state of Texas, not insureds.  Section 981.001 provides that Texas has an interest in controlling the transaction of surplus lines insurance because it is necessary to protect "the revenues of this state" and to protect "authorized insurers, which under the laws of this state must meet strict standards relating to the regulation and taxation of the business of insurance, from unfair competition by unauthorized insurers."  TEX. INS. CODE § 981.001(b)(5) and (6).  But even without Section 981.001, it is clear that Section 981.004 is not designed to protect insureds.  Consumers generally benefit from competition and a wide variety of choice in service providers.

Under Texas law, the violation of a statute does not – standing alone – create a concrete injury.   *Novak*, 52 S.W.3d at  707-08.  A plaintiff must suffer from something

more than a desire to see the law enforced as written to prove such an injury.  See *id.*
In *Novak*, the plaintiff had received a letter from the M.D. Anderson Cancer Center
requesting donations.  He alleged that the letter contained a false statement of the
Center's cure rate, and sued for common-law fraud and mail fraud  *Id.* at 708-09.  But
the court zeroed in on one key fact: the plaintiff had never donated in reliance on the
letter, which meant he had suffered no injury and lacked standing.  The plaintiff
contended that he had standing despite his lack of injury because the offense of mail
fraud was complete as soon as the Center placed the fraudulent letter in the mail.  *Id.* at
707.  Because mail fraud did not require proof of an injury, the plaintiff argued, "no injury
to the recipient is necessary for the offense to be completed and for the controversy to
mature."  *Id.* The court disagreed, and noted that, because the criminal mail fraud
statute could be violated without injuring anyone, its violation did not support standing.
The Court stated: "The government can punish unsuccessful schemes to defraud . . .
but a civil plaintiff 'faces an additional hurdle' and must show an injury caused 'by
reason of' the violation.'"  *Id.* (quoting *Summit Props., Inc. v. Hoechst Celanese Corp.*,
214 F.3d 556, 559 (5th Cir. 2000), reversed in part on other grounds by *Bridge v.
Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).  According to *Novak*, though the
legislature may have an interest in punishing certain innocuous behavior, this does not
allow *plaintiffs* to shirk their duty of establishing an injury.  In short, under *Novak*, a
plaintiff cannot prove standing by alleging that the defendant violated a statute that –
like Section 981.004 – does not exist to prevent injury.  *Id.* at 707-08.

**B.     Sections 981.004 and 981.005 Do Not Support a Private Cause of Action**

The Plaintiffs assert a putative class action on behalf of all persons and entities that have purchased nonsubscriber coverage from Homeland from or through Allen, Ferrell, or AIM, because Homeland (an eligible surplus lines insurer) allegedly issued such policies before a diligent effort was made to place coverage with an admitted Texas insurer.[13]   The Plaintiffs allege that such conduct by Homeland constitutes a violation of Section 981.004 of the Code, and, under Section 981.005, entitles the Plaintiffs and Class to an injunction enjoining Homeland from asserting any contractual defenses or exclusions to coverage under Section 981.005.[14]   But Sections 981.004 and 981.005 do not support a private cause of action.  Thus, the Plaintiffs lack standing to enforce these sections.

Texas courts will not "imply . . . a right of enforcement into [a] statute" that does not provide "a blanket right of enforcement or [an] express cause of action."  *Witkowski v. Brian, Fooshee and Yonge Props.*, 181 S.W.3d 824, 832 (Tex. App. – Austin 2005, no pet.).   Instead, Texas courts "apply a 'strict rule of construction' to statutory enforcement schemes and imply causes of action only when the drafters' intent is clearly expressed from the language as written."  *Id.* at 831.  In *Witkowski*, a group of tenants sought to enforce a statute that required their landlord to reserve some apartments for low-income tenants.   *Id.* at 826-27.   The statute allowed judicial enforcement of the lower-income occupancy requirements.   *Id.* at 830-31.   But a separate provision of the statute, which was not expressly judicially enforceable, stated that the lower-income occupancy requirements applied only "during the remaining

---

[13] Live Petition at ¶¶ 28, 30.
[14] *Id.* at ¶28.

useful life of the property." *Id.* at 831. The court found that the tenants could not enforce this term provision as the statute did not expressly make it judicially enforceable. *Id.* at 831. In other words, though tenants could force landlords to provide low-income housing, they could not require landlords to provide it indefinitely or challenge a landlord's decision as to when a property was no longer useful. The court acknowledged that there might be some unfairness inherent in its holding, but found that "a right of enforcement should not be implied simply because the statute 'fails to adequately protect intended beneficiaries.'" *Id.*

Other Texas cases similarly refuse to create a private cause of action under a statute that does not expressly provide for one. *Brown v. De La Cruz*, 156 S.W.3d 560 (Tex. 2004) (refusing to create a private cause of action out of a statute that required a seller of property to record the transfer of legal title and imposed a penalty for failure to do so, but did not state that the penalty was due to private plaintiffs); *Martin v. Clinical Pathology Labs.*, 343 S.W.3d 885 (Tex. App. – Dallas 2011, pet. denied) (refusing to create a wrongful termination cause of action out of a statute that required employers to give employees time off to vote where an employee was fired for voting); *Abatement Inc. v. Williams*, 324 S.W.3d 858 (Tex. App. – Houston [14th Dist.] 2010, pet. denied) ("A cause of action may be implied only when a legislative intent to do so appears in the statute.").

*Witkowski* and similar cases make clear that Texas courts do not allow plaintiffs to demand compliance with a statute that the legislature has not expressly authorized private citizens to enforce. Just like the statute at issue in *Witkowski*, Chapter 981 of the Code does not expressly authorize judicial enforcement of the conduct that Section

981.004 requires.  Here, however, it is even clearer that there is no right to enforce Chapter 981.  In *Witkowski*, the court noted that a statute's intended beneficiaries may not enforce a statute even where, absent a right to enforcement, the statute will not adequately protect them.   181 S.W.3d at 831.  But the Texas legislature did not design Chapter 981 to protect insureds, as discussed in Section V.A.2 above.   Instead, it protects insurers and the state of Texas.  TEX. INS. CODE § 981.001.  Even if Chapter 981 did protect insureds, the Plaintiffs do not plead that they have suffered any injury resulting from the alleged Chapter 981 violation.  Thus, unlike in *Witkowski*, there is no unfairness in preventing the Plaintiffs and Class from suing to enforce Chapter 981 because they are not its intended beneficiaries nor have they suffered harm from its alleged violation.

Further, Section 31.002(3) of the Code provides that it is the duty of the Texas Department of Insurance to "ensure that this code and other laws regarding insurance and insurance companies are executed."   And Section 31.021(a) provides that the Commissioner of Insurance "shall administer and enforce this code."  Section 101.103 of the Code provides the Commissioner with the ability to enforce the Code and impose civil penalties where necessary to ensure enforcement of the Code.  Thus, it is the duty and province of the Texas Department of Insurance and the Texas Commissioner of Insurance to ensure compliance with this Code, not private citizens

### C.   Even if Chapter 981 Supported a Private Cause of Action, The Plaintiffs Bring Such a Claim Prematurely

Even if a violation of Section 981.004 could be viewed as causing an injury and Section 981.005 could be viewed as creating a cause of action allowing Plaintiffs to sue for the nonenforcement of exclusions in insurance policies, it is premature for the Court

to hear that "cause of action."  Whether a plaintiff has standing to bring a suit is often reframed as whether there is a "ripe" controversy.  Texas courts are "not empowered to give advisory opinions," or, in other words, rule on cases that are not yet "ripe." *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 443 (Tex. 1998).  "A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass."  *Id.*  Here, any dispute over whether Section 981.005 applies to enjoin Homeland from enforcing nonsubscriber policies that it issued to the Plaintiffs or the Class is not yet ripe because Homeland is not attempting to enforce those policies.

Section 981.005 allows an insured to enforce a policy against an insurer and forbids an insurer from enforcing the policy where it has materially and intentionally violated Chapter 981.  Thus, before a dispute over whether Section 981.005 applies is ripe, three events must occur: (1) the insured must suffer a loss covered by the policy that was issued in violation of Section 981.004, (2) the insured must make a claim for that loss with the insurer, and (3) the insurer must deny the claim because of an exclusion or defense that Section 981.005 would forbid the insurer from relying on.  All three of these events have not occurred as to the named Plaintiffs.   The named Plaintiffs allege that the first two events have occurred.  They contend that Mejia's death has given rise to the Underlying Suit, which is causing them to incur losses covered by the Policies.  But the Plaintiffs do not plead that the Defendants are attempting to rely on exclusions or defenses that Section 981.005 forbids them from enforcing.

Indeed, Homeland has never argued that exclusions or defenses preclude coverage.  Homeland has consistently asserted that Minerals is not entitled to coverage

only because it did not purchase a policy from Homeland, and that loss resulting from Mejia's death is not covered as to Blue Ribbon and Gearn Offshore because they did not employ Mejia, and the Policies cover only losses resulting from injury to an *employee*. This argument, that even if the Policies are enforced as written, the Plaintiffs are not entitled to coverage, is still available even if a violation of Section 981.004 occurred. *See Nautilus Ins. Co. v. Nicky & Claire's Day Care, Inc.*, No. EP-08-CV-297-DB, 2009 U.S. Dist. LEXIS 129486, at *39 (W.D. Tex. Aug. 13. 2009)  (holding that while a violation of Section 981.004 may forbid an insurer from asserting defenses and exclusions under Section 981.005, it does not entitle insureds to "rewrite" the policy and obtain more coverage than they purchased).

In short, Section 981.005 is irrelevant to the named Plaintiffs because they do not plead that there is any defense or exclusion in the Policies that should not apply.  The Texas Supreme Court recently held that "if injury is only hypothetical, there is no real controversy."  *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 307 (Tex. 2008).  The court distinguished cases where an injury is only "a matter of time" from those where it "might never happen."  *Id.*  Here, the coverage dispute presented in this case very well "might never" turn into one that involves exclusions or defenses that Section 981.005 would prevent Homeland from applying.

Thus, the named Plaintiffs lack standing to assert a claim that Section 981.005 should apply.  *Id.* (finding that plaintiffs lacked standing to bring suit over a hypothetical injury, meaning that the court had no jurisdiction to hear it).

**VI.**
## MOTION TO DISMISS THE CONSPIRACY CLAIM: COUNT 7

For the three reasons set out in Section IV above, the Plaintiffs also lack standing to bring the conspiracy claim asserted in Count 7.   The Plaintiffs contend that the OneBeacon Defendants, AIM, and Allen conspired to violate the Code by creating "window dressing" that made it falsely appear that a diligent effort had been made to place Blue Ribbon and Gearn Offshore with admitted carriers.[15]   From the conduct alleged, it appears that the Plaintiffs meant to allege a conspiracy to violate Section 981.004, though they do not name any particular Code section in Count 7.   Under Texas law, the tort of conspiracy is a "derivative tort."   *Brooks v. Chevron USA, Inc.*, No. 13-05-029-CV, 2006 Tex. App. LEXIS 4479, at *33 (Tex. App. -- Corpus Christi May 25, 2006, pet. denied) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).   "Where there is no standing to pursue any underlying tort, there is no standing to sue for conspiracy."   *Id.*   Here, for the three reasons discussed in Section IV, the Plaintiffs lack standing to bring suit for a violation of Section 981.004.   They therefore also lack standing to bring the claim alleged in Count 7 for conspiracy to violate Section 981.004.

**VII.**
## CONCLUSION

It is clear from the face of the Live Petition that Minerals is not entitled to relief under any of the Counts related to obtaining insurance coverage or enforcing an insurance policy against Homeland.   It never purchased a policy from Homeland or any of Homeland's related entities.   It cannot maintain a cause of action for insurance coverage that it did not buy.   The claims for a violation of Chapter 981 must also fail. Neither the named Plaintiffs nor the Class have standing to assert these claims because

---

[15] Petition ¶¶ 62-63.

they have not pleaded that the alleged violation of Chapter 981 injured them.  Moreover, even if there were such an injury, Chapter 981 does not support a private cause of action.  Finally, it is premature to hear the claim that Homeland may not enforce the Policies; it has not attempted to enforce the Policies and might never do so.   The OneBeacon Defendants therefore request that the Court dismiss (1) Counts 1, 3, 4, 5, 6, and 8 as to Minerals, (2) Count 6 (for violation of Chapter 981) as to all the Plaintiffs, (3) Count 7 (the conspiracy claims) as to all the Plaintiffs, and (4) the Plaintiffs' claims and the putative class claims in Count 9 based on a violation of Chapter 981 as to all the Plaintiffs.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served to all counsel listed below on this 13th day of June, 2013, via the Court's ECF System and/or certified mail, return receipt requested.

John H. Lovell
Deborah D. Reeves
Lovell, Lovell, Newsom & Isern, L.L.P.
112 West 8th Ave., Suite 1000
Eagle Centre Building
Amarillo, TX  79101-2314

Mark A. Ticer
4144 North Central Expressway
Suite 1255
Dallas, TX 75204

*Attorneys for Plaintiffs*

Juan C. Hernandez
Hernandez & Browning
8111 LBJ Freeway, Suite 1065
Dallas, TX  75251

Mark A. Ticer
Law Office of Mark A. Ticer
4144 North Central Expressway
Suite 1255
Dallas, TX 75204

Robert C. Lyon
Robert Lyon & Associates
3301 Century Drive, Suite A
Rowlett, TX 75088

*Attorneys for Defendant Consuelo Ayala, Individually and as the Representative of the Estate of Pedro Mejia Beltran and as Next Friend and Natural Mother of Minors,* EMA, JYMA, and CBM

W C Bratcher
Mark McBrayer
Crenshaw, Dupree & Milam, L.L.P.
P.O. Box 1499
Lubbock, Texas 79408

Slater C. Elza
Underwood Law Firm, P.C.
145 W. 3rd
Hereford, TX  79045

*Attorneys for Defendant Mark Collier*

Richard E. Schellhammer
Cara D. Kennermer
Goins, Underkofler, Crawford & Langdon
1201 Elm Street
Dallas, Texas 75270

*Attorneys for Defendant Terry M. Ferrell*

Robert G. Chadwick, Jr.
Timothy B. Soefje
Campbell & Chadwick, P.C.
4201 Spring Valley Road
Suite 1250
Dallas, TX 75244

*Attorneys for Defendants Elgin B. Allen, Jr. and AIM Association Insurance Management, Inc.*

   */s/ Michael Keeley*
Michael Keeley