**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| MAGNUM MINERALS, L.L.C., MAGNUM BLUE RIBBON FEEDS, INC., GEARN OFFSHORE, INC., and TIM A. GEARN, Individually, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| HOMELAND INSURANCE COMPANY OF NEW YORK, MARK COLLIER, CONSUELO AYALA, Individually and as the Representative of the Estate of PEDRO MEJIA BELTRAN and as Next Friend and Natural Mother of Minors, EMA, JYMA and CBM, ELGIN B ALLEN, Jr., AIM ASSOCIATION INSURANCE MANAGEMENT, INC., TERRY M. FERRELL, ONEBEACON INSURANCE GROUP, ONEBEACON ACCIDENT GROUP, ONEBEACON AMERICA INSURANCE COMPANY, ONEBEACON INSURANCE COMPANY, and TRADERS & GENERAL INSURANCE COMPANY, | § § § § § § § § § § § § § § § § | CIVIL ACTION NO.  2:13-cv-00103-J |
| Defendants. | § § | |

**BRIEF IN SUPPORT OF ONEBEACON DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

DATED: June 13, 2013.

Respectfully submitted,


/s/ Michael Keeley
MICHAEL KEELEY
State Bar No. 11157800
JOHN R. RIDDLE
State Bar No. 16890200
CARLA CRAPSTER
State Bar No. 24065094
STRASBURGER & PRICE, LLP.
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:   (214) 651-4300
Facsimile:   (214) 651-4330

              and

WYATT BROOKS
State Bar No. 03075600
BURDETT, MORGAN, WILLIAMSON &
BOYKIN, LLP
3423 S. Soncy Rd., Suite 300
Amarillo, Texas 79119
Telephone:   (806) 358-8116
Facsimile:   (806) 358-1901

ATTORNEYS FOR DEFENDANTS
HOMELAND INSURANCE COMPANY OF
NEW YORK, ONEBEACON INSURANCE
GROUP, LLC, ONEBEACON ACCIDENT
GROUP, ONEBEACON AMERICA
INSURANCE COMPANY, ONEBEACON
INSURANCE COMPANY, and TRADERS &
GENERAL INSURANCE COMPANY

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................. 1

II.    UNDISPUTED MATERIAL FACTS ...................................................... 3

       A.    The Gearn Offshore and Blue Ribbon Policies ........................ 3

       B.    The Accident ........................................................................... 7

       C.    Mejia's Employment with Minerals .......................................... 7

       D.    The Wrongful Death Suit by Ayala ....................................... 10

III.   GROUNDS FOR THIS MOTION ........................................................ 11

IV.    SUMMARY JUDGMENT STANDARD ................................................ 13

V.     HOMELAND IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS 1 AND 8
       BECAUSE IT OWES NO DUTY TO INDEMNIFY OR DEFEND BLUE RIBBON,
       GEARN OFFSHORE, OR MINERALS ............................................... 14

       A.    Homeland Does Not Owe a Duty to Indemnify Gearn Offshore, Blue
             Ribbon, or Gearn for Liability to Ayala Because Mejia Was Not a Covered
             Person under the Policies ...................................................... 14

       B.    Homeland Does Not Owe a Duty to Defend Gearn Offshore, Blue
             Ribbon, or Gearn in the Underlying Suit Because Mejia is not Alleged to
             be a Covered Person, and, in Fact, is Not a Covered Person ................ 15

VI.    HOMELAND IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS 3 AND 4
       BECAUSE HOMELAND OWES NO DUTY TO REIMBURSE GEARN FOR HIS
       ATTORNEYS' FEES BECAUSE IT HAD NO DUTY TO DEFEND GEARN ..... 21

VII.   THE  ONEBEACON  DEFENDANTS  ARE  ENTITLED  TO  SUMMARY
       JUDGMENT ON COUNTS 5, 6, AND 7 BECAUSE HOMELAND IS AN
       ELIGIBLE SURPLUS LINES INSURER, ALLEN IS A LICENSED SURPLUS
       LINES AGENT AND PLAINTIFFS CANNOT REWRITE THE POLICIES TO
       OBTAIN THE RELIEF THEY SEEK ................................................... 23

       A.    Chapter 101 is Entirely Inapplicable ...................................... 23

       B.    Chapters 101 and 981 Do Not Permit Plaintiffs to Rewrite the Policies . 25

VIII.  CONCLUSION ................................................................................. 27

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allstate Ins. Co. v. Disability Servs. of the Southwest, Inc.*,
400 F.3d 260 (5th Cir. 2005) ............................................................................ 16, 22

*Allstate Ins. Co. v. Hallman*,
159 S.W.3d 640 (Tex. 2005) .................................................................................. 16

*Blue Ridge Ins. Co. v. Hanover Ins. Co.*,
748 F. Supp. 470 (N.D. Tex. 1990) ................................................................. 17, 19

*D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*,
300 S.W.3d 740 (Tex. 2009) .................................................................................. 14

*Freeport Welding*,
699 F.3d at 839, 841-43 ........................................................................................ 17

*Gonzales v. Am. States Ins. Co. of Tex.*,
628 S.W.2d 184 (Tex. Civ. App.—Corpus Christi 1982, no writ) ............................. 18

*Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*,
143 F.3d 192 (5th Cir. 1998) ................................................................................. 17

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*,
197 S.W.3d 305 (Tex. 2006) ............................................................................ 16, 17

*Jenkins v. Methodist Hosp. of Dallas, Inc.*,
478 F.3d 255 (5th Cir. 2007) ................................................................................. 13

*King v. Dallas Fire Ins. Co.*,
85 S.W.3d 185 (Tex. 2002) .............................................................................. 16, 22

*Lafarge Corp. v. Hartford Cas. Ins. Co.*,
61 F.3d 389 (5th Cir. 1995) ................................................................................... 22

*Lexington Ins. Co. v. Strayhorn*,
209 S.W.3d 83 (Tex. 2006) .................................................................................... 25

*Liberty Mut. Ins. Co. v. Graham*,
407 F. Supp. 2d 808 (N.D. Tex. 2005) .................................................................. 17

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ................................................................................. 13

ii

*Lundstrom v. United Serv. Auto. Ass'n-CIC,*
    192 S.W.3d 78 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ...................... 22

*Nautilus Insurance Co. v. Nicky & Claire's Daycare, Inc.,*
    No. EP-08-cv-297-TB, 2009 U.S. Dist. LEXIS 129486 (W.D. Tex. Aug. 13,
    2009) ............................................................................................................ 26, 27

*Ooida Risk Retention Group, Inc. v. Williams,*
    579 F.3d 469 (5th Cir. 2009) ..................................................................... 19

*Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.,*
    279 S.W.3d 650 (Tex. 2009) ..................................................................... 17

*Prodigy Comm. Corp. v. Ag. Excess & Surplus Ins. Co.,*
    195 S.W.3d 764 (Tex. App. Dallas 2006), rev'd on other grounds, 288
    S.W.3d 374 (Tex. 2009) ............................................................................ 24

*Republic Ins. Co. v. Stoker,*
    903 S.W.2d 338 (Tex. 1995) ..................................................................... 22

*Royal Ins. Co. v. Hartford Underwriters Ins. Co.,*
    391 F.3d 639 (5th Cir. 2004) ............................................................... 21, 22

*Simco Enters. v. James River Ins. Co.,*
    566 F. Supp. 2d 555 (E.D. Tex. 2008) .................................... 14, 15, 16, 22

*State Farm Fire & Cas. Co. v. Simmons,*
    963 S.W.2d 278 (Tex. 1996) ..................................................................... 22

*Transp. Ins. Co. v. Moriel,*
    879 S.W.2d 10 (Tex. 1994) ....................................................................... 22

*Tri-Coastal Contractors, Inc.,*
    981 S.W.2d at 863 .................................................................................... 19

*Trinity Universal Ins. Co. v. Cowan,*
    945 S.W.2d 819 (Tex. 1997) ..................................................................... 22

*Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.,*
    343 S.W.3d 859 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) ......... 18, 19, 20

*Western Heritage Insurance Company v. River Entertainment,*
    998 F.2d 311 (5th Cir. 1993) ..................................................................... 17

*Westport Ins. Corp. v, Atchley, Russell, Waldrop & Hlavinka, L.L.P.,*
    267 F. Supp. 2d 601 (E.D. Tex. 2003) ...................................................... 17

*Zurich Am. Ins. Co. v. Nokia, Inc.*,
    268 S.W.3d 487 (Tex. 2008) ................................................................. 17

**STATUTES**

Chapter 981 of the Code ...................................................... 13, 23, 25, 26, 27

Tex. Ins. Code § 101.201 ............................................................. 3, 12, 24, 25

Tex. Ins. Code § 981.002(3) ..................................................................... 25

Tex. Ins. Code § 981.004 ..................................................................... 25, 26

Tex. Ins. Code § 981.005 ..................................................................... 25, 26

Tex. Ins. Code § 981.203 ..................................................................... 24, 25

§ 42.042 of the Texas Human Resources Code.............................................. 26

Chapter 101 of the Texas Insurance Code.............................. 1, 3, 12, 13, 23, 25, 27, 28

**RULES**

FED. R. CIV. P. 12(b)(6)....................................................................... 1, 4, 27

FED. R. CIV. P. 56 ..................................................................................... 2

FED. R. CIV. P. 56(c).................................................................................. 13

Defendants Homeland Insurance Company of New York, OneBeacon Insurance Group, LLC (improperly named in the caption as OneBeacon Insurance Group), OneBeacon Accident Group, a division of OneBeacon Insurance Group, LLC (but not a separate legal entity), OneBeacon America Insurance Company, OneBeacon Insurance Company, and Traders & General Insurance Company (collectively, the "OneBeacon Defendants"), file this Brief in Support of their Motion for Summary Judgment ("Motion").[1]   Plaintiffs seek relief under nine separate Counts.   The OneBeacon Defendants have separately moved to dismiss Counts 1, 3, 4, 5, and 8 as to Magnum Minerals, L.L.C., and Counts 6, 7, and 9 as to all Plaintiffs, under Federal Rule of Civil Procedure 12(b)(6).   This Motion seeks summary judgment on Counts 1, 3, 4, 5, 6, and 8 as to Magnum Blue Ribbon Feeds, Inc., Gearn Offshore, Inc., and Tim Gearn.   If the Court grants the Motion to Dismiss and this Motion, it will resolve all claims against the OneBeacon Defendants in this lawsuit.

## I.
## INTRODUCTION

This Motion presents two issues.  First, must an insurance company that issues a workers'-compensation-type insurance policy provide coverage for the death of a worker that the insured did not employ?  Second, can the OneBeacon Defendants be held liable under a Chapter of the Texas Insurance Code (Chapter 101) that does not apply to them?

This case involves three related entities: Magnum Minerals, L.L.C. ("Minerals"), Magnum Blue Ribbon Feeds, Inc. ("Blue Ribbon"), and Gearn Offshore, Inc. ("Gearn

---

[1] In support of the Motion, the OneBeacon Defendants have filed an Appendix with supporting affidavits and documents that are exhibits to the Appendix.  Citations to the record in this brief will include citations to specific pages of the Appendix, as required by the rules of this Court.

Offshore").   Blue Ribbon and Gearn Offshore opted out of the Texas workers'
compensation program.   Thus, they decided to acquire insurance known as
"nonsubscriber" policies, which generally covers losses that would otherwise be
covered by workers' compensation.  They purchased this type of coverage from one of
the Defendants, Homeland Insurance Company of New York ("Homeland").   Minerals
also opted out of the workers' compensation program, but it never purchased any
insurance coverage from Homeland.

Pedro Mejia ("Mejia"), an employee of Minerals, was tragically killed in the
course of his employment with Minerals when a salt storage silo collapsed and
crushed him on February 2, 2011 (the "Accident").   Mejia's alleged common law wife
has sued Minerals, Blue Ribbon, and Gearn Offshore, and others, for wrongful death
(the "Underlying Suit").   In the case at bar, Minerals, Blue Ribbon, and Gearn Offshore
demand that the OneBeacon Defendants defend them in the Underlying Suit and
indemnify them for any judgment that may be entered against them therein.   But the
policies that Homeland issued to Blue Ribbon and Gearn Offshore cover losses
resulting from injury or death to *employees* receiving their pay on a regular basis from
the "Named Insured" in the policies.   Blue Ribbon and Gearn Offshore are the "Named
Insureds" on the two policies at issue here.   But, it is uncontroverted that at the time of
the Accident, Blue Ribbon and Gearn Offshore did not employ Mejia and were not
paying him (on a regular basis or otherwise).   Thus, there can be no coverage for Blue
Ribbon, Gearn Offshore, or Gearn.   The OneBeacon Defendants are entitled to
summary judgment under Federal Rule of Civil Procedure 56 on Blue Ribbon, Gearn
Offshore, and Gearn's coverage claims.

In their claims based on violations of Chapter 101 of the Texas Insurance Code, the Plaintiffs contend that Homeland cannot enforce the policies because it is an unauthorized insurer and the policies constitute "unauthorized insurance."  They allege that the other OneBeacon Defendants are also liable for Plaintiffs' damages because they assisted in procuring the policies.  Homeland, because it is an eligible surplus lines insurer (and was when it issued the Policies), is not subject to Chapter 101. Section 101.201 of the Code, which the Plaintiffs sue under, does not apply to insurance that a licensed surplus lines agent procures from an eligible surplus lines insurer.  This exception applies here, a fact that is fatal to Plaintiffs' claims under Chapter 101.

## II.
## UNDISPUTED MATERIAL FACTS[2]

**A.     The Gearn Offshore and Blue Ribbon Policies**

On August 1, 2009, Homeland issued to Gearn Offshore its Texas Occupational Injury/Employer's Liability Policy, Policy No. TNS-AY00552 (the "Gearn Offshore Policy").[3]  The Named Insured in this policy is Gearn Offshore.[4]  On January 13, 2010, Homeland issued to Blue Ribbon its Texas Occupational Injury/Employer's Liability Policy, Policy No. TNS-AY00635 (the "Blue Ribbon Policy")[5] (together, the Gearn Offshore Policy and the Blue Ribbon Policy are referred to as the "Policies.").  The

---

[2]  These facts are established by Plaintiffs' allegations and by the Affidavits and other documents included in the Appendix filed in support of the Motion.
[3]  Affidavit of Andrea S. Walton ("Walton Aff.") ¶3, at Appendix ("App.") 10; Ex. 2: Gearn Offshore Policy at App. 19-53.
[4]  Gearn Offshore Policy at App. 19.
[5]  Affidavit of Andrea S. Walton ("Walton Aff.") ¶4, at App. 10; Ex. 4: Blue Ribbon Policy, at App. 60-95.

Named Insured in this policy is Blue Ribbon.[6]   Plaintiffs do not even allege that Homeland ever issued an insurance policy to Minerals.[7]

The Policies were placed with Homeland by Elgin B Allen, Jr. ("Allen") and his company, AIM Association Insurance Management, Inc. ("AIM").[8]   Allen is a licensed Texas surplus lines agent and was at the time the Policies were sold and issued.[9]   Allen placed the Policies with Homeland, which is an eligible surplus lines insurer under Texas law and was when Homeland issued the Policies.[10]   The Policies each contain the same pertinent provisions.  Initially, the cover page of the Policy provides:

> This Policy is a legal contract between the Named Insured and the Company [Homeland].   The Company agrees to insure the Named Insured against loss covered by this Policy, subject to its provisions, limitations, and exclusions.[11]

The terms "you" and "your" are defined at page three of the Policy, under the section titled "Agreement," as "the Named Insured shown in the Declarations.

The Policies include the following pertinent definitions:

> **Accident** or **Accidental** means an event which was sudden, unintended, unforeseen, unplanned and unexpected by the **Covered Person** that occurs at a specific identifiable time and place.

> **Covered Person** means a person who is employed in your regular business and receives his or her pay on a regular basis by means of a salary or wage directly from you and whose salary or wage is subject to all applicable state and federal income taxes.  A **Covered Person** must be employed by you in your regular business at the time and place of the

---

[6] Blue Ribbon Policy, at App. 62.
[7] *See* Plaintiffs' Fourth Amended Petition (the "Live Petition").  The OneBeacon Defendants move to dismiss the coverage claims asserted by Minerals in their separate Rule 12(b)(6) Motion to Dismiss. Thus, discussion of Minerals' claims is omitted from this motion for summary judgment.
[8] Walton Aff. ¶3, 4, at App. 10.
[9] *Id.* ¶¶6, 8, at App. 11; Ex. 5: Texas Department of Insurance license issued to Allen, at App. 97; Affidavit of John R. Riddle ("Riddle Aff.") ¶5, at App. 107; Ex. 6: Texas Department of Insurance Licensing Search Results for Allen, at App. 117-18.
[10] Affidavit of Cernera ("Cernera Aff.") ¶¶ 3-4, at App. 100; Riddle Aff. ¶6, at App. 107; Ex. 7: Texas Department of Insurance Company Profile Search Results for Homeland, at App. 120-25.
[11] Gearn Offshore Policy, at App. 24; Blue Ribbon Policy, at App. 66.

**Accident** causing **Bodily Injury** and must be acting within his or her **Scope of Employment**.  A **Covered Person** does not include sub-contractors or independent contractors, whether they are employed by you on an occasional, part-time or full-time basis.  A **Covered Person** does not include a third-party agent.

**Named Insured** means the employer whose name and address are stated in the Declarations, provided that for coverage purposes, the following shall apply:

. . . .

3.     If the **Named Insured** is a corporation, only the corporation is the **Named Insured**.  Officers, directors and shareholders are deemed to be **Named Insureds** for their actions on behalf of the corporate **Named Insured**, but only with respect to the conduct of the business or businesses of the **Named Insured**.[12]

Based upon the above, because Gearn Offshore and Blue Ribbon are each corporations, only those two entities, along with their officers, directors and shareholders, are deemed to be Named Insureds.

Section II.A of the Policies provides for reimbursement for benefits paid for loss of life suffered by a Covered Person due to an Accident.[13]  Section II.D of the Policies provides limited liability indemnity coverage for the Named Insureds as follows:

We will reimburse you the amounts paid in excess of your **Deductible** for **Bodily Injury Damages** that arise from a claim of workplace negligence made by a **Covered Person** or by a **Covered Person's Spouse** or children as beneficiaries of a deceased **Covered Person**.

. . . .

In addition to the Definitions in SECTION I of this Policy, the following Definition applies to coverage for Limited Employer's Liability.

**Bodily Injury Damages** means all reasonable amounts paid by you to obtain a release of liability to settle a claim, to pay a judgment, and to reasonably defend, mediate, or arbitrate a workplace negligence action brought by any **Covered Person** due to an **Accident** or **Occurrence**.

---

[12] Gearn Offshore Policy, at App. 26, 28, 30; Blue Ribbon Policy, at App. 68, 70, 72.
[13] Gearn Offshore Policy, at App. 33; Blue Ribbon Policy, at App. 75.

**Bodily Injury Damages** includes settlements, court costs, interest on judgments, investigations, adjustment expenses, mediation arbitration, and legal expense to defend the claim of a **Covered Person**.  It also includes amounts awarded by a court to the **Covered Persons** for pain and suffering and punitive or exemplary damages.  It does not include either your office expenses or salaries of the **Covered Persons**.  We reserve the right to pay the **Bodily Injury Damages** on your behalf.  We have the sole discretion whether amounts sought to be reimbursed under this coverage are reasonable.[14]

Thus, in order for either Gearn Offshore or Blue Ribbon to have liability coverage, Mejia must have been a Covered Person; that is, a person who was employed in the regular business of Gearn Offshore or Blue Ribbon **AND** he must have received his pay on a regular basis by means of a salary or wage directly from Gearn Offshore or Blue Ribbon.   It is uncontroverted that at the time of the Accident Mejia was an employee **only** of Minerals and that he received his pay on a regular basis **only** from Minerals.[15]

Section VII of the Policies contains the following duty to defend:

**Duty to Defend By Us. (under $50,000 Deductible)**  We shall have the duty at our own expense to defend any claim or suit seeking damages covered under this Policy.   You must cooperate with us in the investigation, settlement and defense of the claim or suit.[16]

Here, there is no duty to defend because the Lawsuit does not seek damages covered under either of the Policies.

---

[14] Gearn Offshore Policy, at App. 37-38; Blue Ribbon Policy, at App. 79-80.
[15] *See* Section II.C below.
[16] Gearn Offshore Policy, at App. 45; Blue Ribbon Policy, at App. 87.

## B.    The Accident

On February 2, 2011, Mejia was killed while working at Minerals' salt plant in Hereford, Texas, when a silo containing salt collapsed and crushed him.[17]    Mike Browning, the General Manager of Minerals, witnessed the Accident.[18]

## C.    Mejia's Employment with Minerals

Plaintiff Tim Gearn ("Gearn") owns and manages, along with others, several businesses, including Minerals, Gearn Offshore, and Blue Ribbon.  Minerals sold salt to customers to be used as an additive to animal feed.[19]   At various times during 2009 and early 2010, Mejia had performed some work for Minerals, Gearn Offshore and Blue Ribbon.[20]   It is uncontroverted, however, that beginning no later than April 2010, Mejia was employed solely by Minerals and continued to be employed solely by Minerals until he died in the Accident.[21]   Thus, at the time of the Accident, Mejia was employed solely by Minerals and was receiving his pay on a regular basis solely from

---

[17] Live Petition ¶24; Ex. 8: Employee Notes, at App. 127; Ex. 9: Oral Deposition of Mike Browning ("Browning Depo.") taken on July 9, 2012, in the Underlying Suit at 10/24-11/7, 14/15-17, 24/2-5, at App. 138-39, 142, 152.

[18] Ex. 9: Browning Depo. at 10/24-11/7, 31/12-33/1, at App. 138-39, 159-61.

[19] Id. at 27/3-22, at App. 155.

[20] Ex. 10: Minerals' Answers to Interrogatory Nos. 9, 10 and 17 from Homeland in the Lawsuit, at App. 234-36; Ex. 11: Minerals' Answers to Interrogatory No. 2 from Allen and AIM in the Lawsuit, at App. 243; Ex. 12: payroll records relating to Mejia, at App. 252-340; Ex. 13: Minerals' 13-week payroll summary relating to Mejia, at App. 342-51; Ex. 14 and 15: Minerals' training records relating to Mejia, at App. 353, 355-57; Ex. 16: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 365-66; Ex. 17: Ayala's records of wages paid to Mejia, at App. 393-477; Ex. 18: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 485-86; and Ex. 19: Ayala's records of wages paid to Mejia, at App. 513-97.

[21] Ex. 9: Browning Depo. at 7/11-19, 8/25-9/8, 21/4-18, 22/15-19, 23/2-4, 82/16-24, 85/15-86/9, at App. 135-37, 149-51, 210, 213; Ex. 10: Minerals' Answers to Interrogatory Nos. 9, 10 and 17 from Homeland in the Lawsuit, at App. 234-36; Ex. 11: Minerals' Answers to Interrogatory No. 2 from Allen and AIM in the Lawsuit, at App. 243; Ex. 12: payroll records relating to Mejia, at App. 252-340; Ex. 13: Minerals' 13-week payroll summary relating to Mejia, at App. 342-51; Ex. 14, 15: Minerals' training records relating to Mejia, at App. 353, 355-57; Ex. 16: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 365-66; Ex. 17: Ayala's records of wages paid to Mejia, at App. 393-477; Ex. 18: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 485-86; Ex. 19: Ayala's records of wages paid to Mejia at App. 513-97; Ex. 20: Blue Ribbon's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 605-06; Ex. 21: Gearn Offshore's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 616-17; Ex. 22: Gearn's Answers to Interrogatory Nos. 8, 9, 15-17 in the Lawsuit, at App. 627, 629.

---

Minerals.  He was not employed by or receiving regular pay from Gearn Offshore, Blue Ribbon, or Gearn.[22]  These facts are uncontroverted and confirmed by interrogatory answers by Plaintiffs and Consuelo Ayala ("Ayala"),[23] Mejia's alleged common law wife.  The written records relating to Mejia's employment, which were produced by the Plaintiffs and by Ayala,[24] also prove that Mejia was employed by only Minerals when the Accident occurred.   The deposition testimony of Browning, Minerals' General Manager, also confirms this undisputed fact.[25]

Finally, even Ayala's claim demonstrates that only Minerals employed Mejia at the time of his death.  In a demand letter to Minerals dated February 4, 2011, counsel for Ayala stated that "Pedro [Mejia] enjoyed working for Magnum [Minerals]," and that his law firm had "been retained to represent the entire Mejia family with regard to serious personal injuries, wrongful death and survivorship action claims as a result of

---

[22] Ex. 9: Browning Depo. at 7/11-19, 8/25-9/8, 21/4-18, 22/15-19, 23/2-4, 82/16-24, 85/15-86/9, at App. 135-37, 149-51, 210, 213; Ex. 10: Minerals' Answers to Interrogatory Nos. 9, 10, 17 from Homeland in the Lawsuit, at App. 234-36; Ex. 11: Minerals' Answers to Interrogatory No. 2 from Allen and AIM in the Lawsuit, at App. 243; Ex. 12: payroll records relating to Mejia, at App. 252-340; Ex. 13: Minerals' 13-week payroll summary relating to Mejia, at App. 342-51; Ex. 14, 15: Minerals' training records relating to Mejia, at App. 353, 355-57; Ex. 16: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 365-66; Ex. 17: Ayala's records of wages paid to Mejia, at App. 393-477; Ex. 18: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 485-86; Ex. 19: Ayala's records of wages paid to Mejia at App. 513-97 Ex. 20: Blue Ribbon's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 605-06; Ex. 21: Gearn Offshore's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 616-17; Ex. 22: Gearn's Answers to Interrogatory Nos. 8, 9, 15-17 in the Lawsuit, at App. 627, 629.

[23] Ex. 10: Minerals' Answers to Interrogatory Nos. 9, 10 and 17 from Homeland in the Lawsuit, at App. 234-36; Ex. 16: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 365-66; Ex. 18: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 485-86; Ex. 20: Blue Ribbon's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 605-06; Ex. 21: Gearn Offshore's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 616-17; Ex. 22: Gearn's Answers to Interrogatory Nos. 8, 9, 15-17 in the Lawsuit, at App. 627, 629.

[24] Ex. 12: payroll records relating to Mejia, at App. 252-340; Ex. 13: Minerals' 13-week payroll summary relating to Mejia, at App. 342-51; Ex. 17: Ayala's records of wages paid to Mejia, at App. 393-477; and Ex. 19: Ayala's records of wages paid to Mejia, at App. 513-97.

[25] Ex. 9: Browning Depo. at 7/11-19, 8/25-9/8, 21/4-18, 22/15-19, 23/2-4, 82/16-24, 85/15-86/9, at App. 135-37, 149-51, 210, 213.

---

the death of Pedro Mejia at your [Minerals] facility on February 2, 2011.  At this time, this claim is against Magnum Minerals, LLC."[26]

The payroll and other records relating to Mejia's employment produced by the Plaintiffs confirm that Mejia was employed only by Minerals at the time of the Accident and received his paychecks only from Minerals on a regular basis since at least April 2010.[27]  The records produced by Ayala further corroborate these facts.[28]  Further, in his sworn deposition testimony in the Underlying Suit, Browning, who was Mejia's direct supervisor at Minerals and who witnessed the Accident, confirmed that Mejia was employed solely by Minerals on the date of the Accident and had been solely employed by Minerals for several months before the Accident:

> Q. On February the 2nd of 2011, what was Mr. Mejia's title for Magnum Minerals?
> A.      The date again?  The day that he passed?
> Q.      Yes, sir.
> A.      He was my manager at Magnum Minerals.
> Q.      What were his duties as the manager of Magnum Minerals on the date of the incident?
> A.      On the date of the incident, it would have been any — as any other date.  It would have been rolling — you know, rolling product, running a front-end loader, doing some types of paperwork, loading trucks.
> Q.      Was he managing employees around that time frame?
> A.      He had one employee.
> . . . .
> Q.      How many managers did you have at the salt operation around the time of the incident?

---

[26] Ex. 26: correspondence from Hernandez & Browning to Magnum Minerals, L.L.C., at App. 663-64.

[27] Ex. 10: Minerals' Answer to Interrogatory No. 17 in the Lawsuit, at App. 236; Ex. 12: payroll records relating to Mejia, at App. 252-340; Ex. 13: Minerals' 13-week payroll summary relating to Mejia, at App. 342-51; Ex. 14, 15: Minerals' training records relating to Mejia at App. 353, 355-57; Ex. 20: Blue Ribbon's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 605-06; Ex. 21: Gearn Offshore's Answers to Interrogatory Nos. 5, 6, 13 in the Lawsuit, at App. 616-17; Ex. 22: Gearn's Answers to Interrogatory Nos. 8, 9, 15-17 in the Lawsuit, at App. 627, 629.

[28] Ex. 16: Ayala's Answer to Interrogatory No. 6 in the Underlying Suit, at App. 365-66; Ex. 17: Ayala's records of wages paid to Mejia, at App. 393-477; Ex. 19: Ayala's records of wages paid to Mejia, at App. 513-97; Ex. 26: correspondence from Hernandez & Browning to Magnum Minerals, L.L.C., at App. 663-64.

A.    One.

Q.    Just Mr. Mejia, the deceased?

A.    Yes.  But he was my manager — the manager.

. . . .

Q.    How long had Mr. Mejia, the deceased, been the manager at the salt operation?

A.    Oh, probably three or four months.

. . . .

Q.    On the date of the incident, February the 2nd of 2011, who was Mr. Mejia, Pedro Mejia, working for?

A.    Me.

Q.    Okay.  And what company was Mr. Mejia, Pedro Mejia, working for when he died?

A.    Salt.

Q.    Magnum Minerals?

A.    Yes.

. . . .

Q.    And just so I'm clear, when I — a time or two, when I've said Magnum Minerals, you kind of clarified that by saying, the salt operation. Is there another part of Magnum Minerals other than the salt operation?

A.    Well, it's kind of confusing in a way, because, you know, Magnum Minerals — sometimes people talk about it being Magnum Minerals and Magnum Blue, but it's actually just the salt part of its, which is — we call it salt, you know.  We either talk salt or calcium.  So when I think of Magnum Minerals, I think of salt, because that's what it actually is, in my view.

Q. But the interaction between Magnum Minerals and Magnum Blue, is there kind of an overlapping of the two entities when it comes to, for example, employees, equipment, or things of that nature?

A.    No.

Q.    What does Magnum Blue do?

A.    They [Magnum Blue] make calcium.  We [Magnum Minerals] make salt.[29]

Thus, it is uncontroverted that, at the time of the Accident, Mejia was not employed by Blue Ribbon or Gearn Offshore, but instead, was employed only by Minerals.

## D.    The Wrongful Death Suit by Ayala

Ayala filed a wrongful death suit against Minerals on February 4, 2011, in the 222nd District Court, Deaf Smith County, Texas (the "Underlying Suit"). [30]    On

---

[29] Ex. 9: Browning Depo. at 7/11-19, 8/25-9/8, 21/4-18, 22/15-19, 23/2-4, 82/16-24, 85/15-86/9, at App. 135-37, 149-51, 210, 213.

February 15, 2011, Ayala filed a First Amended Petition which added Gearn as a Defendant.[31]   On April 7, 2011, Ayala filed a Second Amended Petition in the Underlying Suit, which added Gearn Offshore and Blue Ribbon as Defendants.[32]   On August 25, 2011, Ayala filed a Third Amended Petition.[33]   Ayala filed a Fourth Amended Petition on December 8, 2011.[34]  Most recently, on January 29, 2013, Ayala filed a Fifth Amended Petition in the Underlying Suit, which is the operative complaint.[35]

## III.
## GROUNDS FOR THIS MOTION

The live pleading in this lawsuit is the Plaintiffs' Fourth Amended Petition and Class Action Petition, which was filed on May 24, 2013, and sets forth nine separate causes of action (the "Amended Petition").[36]   In Count 1 of the Live Petition, the Plaintiffs assert a breach of contract claim against Homeland on the theory that Homeland must defend Plaintiffs in the Underlying Suit and indemnify them for any liability they may ultimately have to Ayala for the Accident.  Similarly, in Count 8 of the Live Petition, Plaintiffs seek a declaratory judgment against Homeland declaring that Homeland owes a duty to Plaintiffs to defend them in the Underlying Suit and to indemnify them for any liability they may ultimately have to Ayala for the Accident.  The

---

[30] Ex. 26: correspondence from Ayala's counsel to Minerals with attached Plaintiff's Original Petition in the Underlying Suit; at App. 666-71; Live Petition ¶24.
[31] Ex. 27: Plaintiffs' First Amended Petition in the Underlying Suit, at App. 674-80.
[32] Ex. 28: Plaintiffs' Second Amended Petition in the Underlying Suit, at App. 682-89.
[33] Ex. 29: Plaintiffs' Third Amended Petition in the Underlying Suit, at App. 691-99.
[34] Ex. 30: Plaintiffs' Fourth Amended Petition in the Underlying Suit, at App. 701-709.
[35] Ex. 31: Plaintiffs' Fifth Amended Petition in the Underlying Suit; Live Petition ¶24, at App. 711-23.
[36] Count 2 is not directed toward any of the OneBeacon Defendants. Count 2 is directed toward Defendants Mark Collier ("Collier"), Terry M. Ferrell ("Ferrell"), and Allen, each insurance agents involved in the sale of the Polices.  The OneBeacon Defendants believe this count is baseless and was included only to destroy diversity jurisdiction and prevent removal of this case when it was first filed. These counts are not directed toward the OneBeacon Defendants, however, and thus they are not addressed in this motion.

---

OneBeacon Defendants do not owe a duty to defend or indemnify any of Plaintiffs as to the Underlying Suit or the Accident and are therefore entitled to summary judgment on these counts.   Minerals and Gearn are not Named Insureds under either of the Policies, and Mejia was not a Covered Person under either of the Policies at the time of the Accident.

In Counts 3 and 4 of the Live Petition, Gearn alleges that he incurred $27,311.70 in attorney's fees in February 2011 and that Homeland violated the Texas Prompt Pay Statute and breached its duty of good faith and fair dealing by not reimbursing Gearn for such attorney's fees.   The OneBeacon Defendants are entitled to summary judgment on these causes because Homeland did not owe a duty to defend Gearn in the Underlying Lawsuit when such fees were incurred.

In Count 5 of the Live Petition, Plaintiffs allege that the Policies constitute unauthorized insurance because Allen was a licensed insurer "in name only."   As a result, Plaintiffs allege that Homeland is precluded from enforcing any contractual rights or exclusions to coverage, and that the remaining OneBeacon Defendants are liable to Plaintiffs.   However, Section 101.201(b) of the Code provides that Chapter 101 does not apply to insurance procured by a licensed surplus lines agent from an eligible surplus lines insurer.   It is undisputed that Allen was a licensed agent and Homeland was an eligible insurer.   Therefore, Chapter 101 of the Code is inapplicable and the OneBeacon Defendants are entitled to summary judgment on Count 5 of the Live Petition.   Even if Chapter 101 of the Code were applicable, which it is not, the Plaintiffs only remedy is to enforce the Policies as written, and obtain the coverage they purchased.   Enforcement of the Policies as written entitles the Plaintiffs to no

relief.  The OneBeacon Defendants are also therefore entitled to summary judgment on Count 5.

In Counts 6 and 7 of the Live Petition, Plaintiffs allege similar relief under Chapter 981 of the Code.  But plaintiffs lack standing to assert a claim under Chapter 981 because it does not provide for a private cause of action, and because they are unable to demonstrate any damages resulting from the alleged breach of Chapter 981. These issues are addressed in the OneBeacon Defendants' Motion to Dismiss.  As with Chapter 101, however, even if Plaintiffs are entitled to pursue a claim under Chapter 981, Plaintiffs only remedy would be to enforce the Policies as written. Thus, if these counts survive the OneBeacon Defendants' Motion to Dismiss, the OneBeacon Defendants are entitled to summary judgment on Counts 6 and 7.

Finally, because Plaintiffs are not entitled to any individual relief, they are not entitled to assert any class-action claims.

## IV.
## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). If, pursuant to the summary judgment evidence, no reasonable juror could find in favor of the nonmovant, then no genuine issue of material fact exists. *Jenkins v. Methodist Hosp. of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007). The nonmovant's burden is not satisfied by "some metaphysical doubt as to the material facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**V.**

**HOMELAND IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS 1 AND 8 BECAUSE IT OWES NO DUTY TO INDEMNIFY OR DEFEND BLUE RIBBON, GEARN OFFSHORE, OR MINERALS**

Homeland is entitled to summary judgment on Counts 1 and 8 of the Live Petition.  The claims asserted in each of these Counts cannot succeed if Homeland does not owe the Plaintiffs a duty to defend them in the Underlying Suit or a duty to indemnify them from any loss arising out of the Accident.  Homeland does not owe such duties to Blue Ribbon, Gearn, or Gearn Offshore because Mejia is not a Covered Person under either of the Policies.

**A.      Homeland Does Not Owe a Duty to Indemnify Gearn Offshore, Blue Ribbon, or Gearn for Liability to Ayala Because Mejia Was Not a Covered Person under the Policies**

The duty to indemnify is "a matter dependent on the facts and circumstances of the alleged injury-causing event, [and] parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify."[37]  "Moreover, an insurer has no duty to indemnify its insured when found liable if the policy at issue does not provide coverage for the claims made against the insured."[38]  Here, the Policies are non-subscriber policies, intended to cover injuries to an insured's *employees*.  Companies purchase this type of coverage when they opt out of Texas's workers' compensation system.  Thus, the Policies cover only losses resulting from injury to a Covered Person, which is defined as "a person who is employed in your regular business and receives his or her pay on a regular basis by means of a salary or wage directly from you and whose salary or wage is subject to all applicable state and federal income

---

[37] *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).
[38] *Simco Enters. v. James River Ins. Co.*, 566 F. Supp. 2d 555, 565 (E.D. Tex. 2008).

taxes."[39]  The Policies further provide that "a Covered Person must be employed by you in your regular business at the time and place of the Accident causing Bodily Injury and must be acting within his or her Scope of Employment."[40]

Mejia was not a Covered Person because he was not employed by Gearn Offshore or Blue Ribbon on the date of the Accident, and because he did not receive his pay on a regular basis from either of these entities on the date of the Accident.  To the contrary, it is uncontroverted that Minerals, and Minerals alone, employed Mejia and paid him a regular wage from April 2010 until he died in the Accident.[41]  Thus, there can be no coverage for Gearn Offshore, Blue Ribbon, or Gearn from April 2010 until the date of the Accident.[42]  Therefore, Gearn Offshore, Blue Ribbon and Gearn have no right to indemnity under the Policies for any liability they might be found to have as a result of the Accident.[43]   Homeland is, therefore, entitled to summary judgment against Gearn Offshore, Blue Ribbon, and Gearn because they are not entitled to indemnity under the Policies, as asserted in Counts 1 and 8 of the Live Petition.

**B.     Homeland Does Not Owe a Duty to Defend Gearn Offshore, Blue Ribbon, or Gearn in the Underlying Suit Because Mejia is not Alleged to be a Covered Person, and, in Fact, is Not a Covered Person**

Under Texas law, an insurer's duty to defend is normally determined by applying the "eight-corners" rule.  The eight-corners rule provides that when a third party sues an insured, the liability insurer's duty to defend is normally determined by

---

[39] Gearn Offshore Policy, at App. 28; Blue Ribbon Policy, at App. 70.
[40] *Id.*
[41] *See supra* footnotes 22-30.
[42] The Policies provide that coverage terminates for a Covered Person on the first day he no longer meets the definition of a Covered Person.  Gearn Offshore Policy; App. at 40; Blue Ribbon Policy, App. at 82.  Blue Ribbon and Gearn Offshore did not employ Mejia after early 2010.  Thus, even if Mejia had been a Covered Person at one point, coverage for him would have ended no later than early 2010.
[43] *Simco*, 566 F. Supp. 2d at 565.

examining the terms of the policy in question and the pleadings of the third-party claimant.[44]   Using this approach, a court is normally confined to reviewing the "four corners" of the live pleading and the "four corners" of the applicable policy.[45]   However, "[i]f a plaintiff's complaint does not allege facts within the scope of policy coverage, an insurer has no legal obligation to defend the insured against the plaintiff's claims."[46] The Fifth Amended Petition in the Underlying Suit, which is the plaintiffs' operative pleading, alleges that Mejia "was in the course and scope of his employment with one or more of the Defendants when he was killed," and that he "was performing his duties for one or more of the Defendants as a laborer when the tragic incident occurred."[47] These allegations are insufficient to establish that Mejia was a Covered Person within the meaning of the Policies.   First, these allegations do not establish that Mejia was employed by Gearn Offshore or Blue Ribbon at the time of the Accident.   More importantly, the Fifth Amended Petition does not allege that Mejia was receiving his pay on a regular basis by means of a salary or wage at the time of the Accident from Gearn Offshore or Blue Ribbon, as is absolutely required for coverage under the express terms of the Policies.   Thus, even a strict application of the eight-corners rule, done without resort to any extrinsic evidence, does not support the conclusion that Homeland has a duty to defend Blue Ribbon, Gearn Offshore or Gearn.

But where, as here, the duty to defend is not clear from the face of the underlying petition, a court is not confined to a strict eight-corners analysis and,

---

[44] *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 306 (Tex. 2006).
[45] *Allstate Ins. Co. v. Disability Servs. of the Southwest, Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).
[46] *Simco Enters. v. James River Ins. Co.*, 566 F. Supp. 2d 555, 564 (E.D. Tex. 2008) (citing *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005)).
[47] Ex. 31: Plaintiffs' Fifth Amended Petition in the Underlying Suit, at App 713.

instead, must look to extrinsic evidence.[48]  "[A]ll state courts would consider it proper to examine extrinsic evidence of fundamental coverage facts, such as whether the party bringing the claim is a named insured under the policy."[49]  "[A] person who is not an insured under an insurance policy is not to be treated as one for defense purposes just because of false allegations made by the damage suit plaintiff."[50]  Whether the duty to defend applies must "be determined by the true facts, not false, fraudulent or otherwise incorrect facts that might be alleged by a personal injury claimant."[51]

Similarly, courts applying Texas law have recognized an exception to a strict eight-corners rule in the interest of justice and have considered extrinsic evidence to determine whether a duty to defend has been activated by a pleading.[52]  For example, in *Western Heritage Insurance Company v. River Entertainment*,[53] the court stated that it is permissible to look to evidence outside the pleadings and the policy "when the petition does not contain sufficient facts to enable the court to determine if coverage exists."[54]  A Texas court of appeals has summarized the rule on extrinsic evidence as follows:

---

[48] *See, e.g., Freeport Welding*, 699 F.3d at 839, 841-43; *Liberty Mut. Ins. Co. v. Graham*, 407 F. Supp. 2d 808, 813-14 (N.D. Tex. 2005).

[49] *Westport Ins. Corp. v, Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F. Supp. 2d 601, 615 (E.D. Tex. 2003).

[50] *Blue Ridge Ins. Co. v. Hanover Ins. Co.*, 748 F. Supp. 470, 473 (N.D. Tex. 1990).

[51] *Id.*

[52] The Texas Supreme Court has neither expressly recognized nor expressly rejected an exception to the eight-corners rule. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497 (Tex. 2008); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009); *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310-11 (Tex. 2006).  But it has acknowledged that other courts have recognized an exception allowing extrinsic evidence when relevant to an independent and discrete coverage issue.  *GuideOne Elite*, 197 S.W.3d at 308; *see also Pine Oak Builders*, 279 S.W.3d at 654.

[53] 998 F.2d 311 (5th Cir. 1993).

[54] *Id.* at 313; *see also See Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 (5th Cir. 1998) (court considered the interrogatory answers of the plaintiff in the underlying suit to determine whether a duty to defend existed).

Where the insurance company refuses to defend its insured on the ground that the insured is not liable to the claimant, the allegations in the claimant's petition control, and facts extrinsic to those alleged in the petition may not be used to controvert those allegations. But, where the basis for the refusal to defend is that the events giving rise to the suit are outside the coverage of the insurance policy, facts extrinsic to the claimant's petition may be used to determine whether a duty to defend exists.[55]

In a recent case, the Houston Court of Appeals recognized an exception to the strict eight-corners.[56] In *Weingarten*, a woman was injured in an after-hours assault at the store that she managed. She sued her employer and Weingarten Realty Management Company ("Weingarten"), the entity that she alleged was her employer's landlord. In truth, however, Weingarten was not the landlord – it merely managed the property on which the store was located. An insurance policy that covered certain incidents on the property would have required the insurer to defend Weingarten had it actually been the landlord/lessor of the property. But because Weingarten was not the landlord, the insurer, Liberty Mutual, refused to provide a defense. The court of appeals held that Liberty Mutual made the right decision, stating:

Liberty Mutual does not argue that the claim brought against Weingarten Management is without merit. Rather, Liberty Mutual argues that Weingarten Management is not an insured under the Norstan policy and, as a total stranger to the policy, is not entitled to a defense against any claim. Enforcing the rule under these circumstances does not further the policy underlying the eight-corners doctrine. This is a "pure coverage" question in which Liberty Mutual does not question the merits of the underlying third-party claim.[57]

---

[55] *Gonzales v. Am. States Ins. Co. of Tex.*, 628 S.W.2d 184, 187 (Tex. Civ. App.—Corpus Christi 1982, no writ)) (emphasis in original).
[56] *Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*, 343 S.W.3d 859, 861 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).
[57] *Id.* at 865.

The court further held that "the status of 'insured' is to be determined by true facts, not false, fraudulent, or otherwise incorrect facts that might be alleged."[58]  The court rejected the argument that Liberty Mutual was obligated to defend anyone sued in the role of landlord, regardless of whether the party was actually a lessor.[59]  The court noted that Liberty Mutual was not attempting to undermine the merits of the underlying claim or to use extrinsic evidence to establish an exclusion to coverage.[60]  The court explained that Liberty Mutual's use of extrinsic evidence to negate the duty to defend was not contrary to the purpose of the eight-corners rule:

> The eight-corners rule prevents an insurer from refusing to defend an insured based on the lack of merit of the plaintiff's case.  *See Tri-Coastal Contractors, Inc.*, 981 S.W.2d at 863.  But applying the eight-corners rule to pure-coverage questions does not advance this policy.  Rather than provide a vital protection to the insured, the rule would impose on insurers the duty to defend parties who—by accident or otherwise—plead themselves into an insurance policy to which they were previously a stranger. If a contract does not exist, a duty to defend should not be allowed to spring into existence based on artful or inartful pleading. . . . Liberty Mutual's policy with Weingarten Investors requires it to defend actual lessors against any claim potentially within the policy.  It does not require it to defend every entity mistakenly believed to be a lessor.[61]

In *Ooida Risk Retention Group, Inc. v. Williams*,[62] the Fifth Circuit Court of Appeals held that extrinsic evidence should have been considered in resolving the duty-to-defend issue.[63]  The court held that the district court erred in not considering extrinsic evidence as to a truck drivers' potential status as a statutory employee.[64]

Here, extrinsic evidence that Mejia was employed by and receiving his pay on a regular basis from Minerals does not contradict the allegations that Mejia "was in the

---

[58] *Id.* at 866 (citing *Blue Ridge Ins. Co. v. Hanover Ins. Co.*, 748 F.Supp 470 (N.D. Tex. 1009)).
[59] *Id.* at 866-868.
[60] *Id.* at 868-69.
[61] *Id.* at 869.
[62] 579 F.3d 469 (5th Cir. 2009).
[63] *Id.* at 476.
[64] *Id.* at 475-76.

course and scope of his employment with one or more of the Defendants when he was killed," or that he "was performing his duties for one or more of the Defendants as a laborer when the tragic incident occurred."  Indeed, such evidence is consistent with these allegations.  Thus, there is no need to invoke an exception to the strict eight-corners rule.  But, if ever a situation called for an exception, this is it.  The Policies provide coverage only for claims by an employee who was a Covered Person at the time of an Accident or by a Covered Person's spouse or children as beneficiaries of a deceased Covered Person.  Coverage is not triggered merely because a claim is made against a Named Insured.   As in *Weingarten*, Homeland is not questioning or attempting to disprove the merits of the underlying claim or use extrinsic evidence to establish an exclusion to coverage.  Nor is Homeland's reliance on extrinsic evidence to resolve the duty-to-defend issue contrary to the purpose of the eight-corners rule.

It is undisputed that, at the time of the Accident, Mejia was employed in Minerals' regular business—not Gearn Offshore's or Blue Ribbons'—and that Mejia was receiving his pay on a regular basis by means of a wage directly from Minerals—not from Gearn Offshore or Blue Ribbon.[65]   Thus, Mejia was not a Covered Person under the Policies when the Accident occurred.[66]  Therefore, Homeland has no duty to defend Gearn Offshore, Blue Ribbon, or Gearn in the Underlying Suit.  Homeland is entitled to summary judgment against Gearn Offshore, Blue Ribbon, and Gearn as to

---

[65] *See supra* footnotes 22-30.
[66] The Policies provide that coverage terminates for a Covered Person on the first day he no longer meets the definition of a Covered Person.  Gearn Offshore Policy, at App. 40; Blue Ribbon Policy, at App. 82.  Any employment of Mejia by Blue Ribbon and Gearn Offshore ceased no later than early 2010.  Thus, even if Mejia had been a Covered Person at one point, coverage for him would have ended no later than early 2010.

their claims that they are entitled to a defense under the Policies, as asserted in Counts 1 and 8 of the Live Petition.

## VI.

### HOMELAND IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS 3 AND 4 BECAUSE HOMELAND OWES NO DUTY TO REIMBURSE GEARN FOR HIS ATTORNEYS' FEES BECAUSE IT HAD NO DUTY TO DEFEND GEARN

In Counts 3 and 4 of the Live Petition, Plaintiffs allege that Gearn incurred $27,311.70 in attorney's fees in February 2011 and that Homeland violated the Texas Prompt Pay Statute and breached its duty of good faith and fair dealing by not reimbursing Gearn for such attorney's fees.[67]   However, as previously explained, Homeland owes no duty to defend Gearn in the Underlying Suit.  This is especially true as to the First Amended Petition in the Underlying Suit, which was the operative pleading when Gearn's fees were incurred.  The First Amended Petition added Gearn as a defendant and was filed on February 15, 2011, and remained the operative pleading until the Second Amended Petition was filed on April 7, 2011.[68]  The only two defendants named in the First Amended Petition were Minerals and Gearn.  In that Petition, Ayala alleged that Mejia was employed by Minerals at the time of the Accident.[69]  Thus, coverage was not even arguably triggered under either the Gearn Offshore Policy or the Blue Ribbon Policy by the First Amended Petition.[70]  Homeland is not alleged to have issued a policy to Minerals or to Gearn, individually.

---

[67] *See also* Ex. 32: correspondence from Lovell Lovell Newsom & Isern, counsel for Plaintiffs in the Lawsuit, to AIM Companies concerning such attorney's fees incurred in February 2011, at App. 725-26.
[68] Ex. 27: Plaintiffs' First Amended Petition in the Underlying Suit, at App. 674; and Ex. 28: Plaintiffs' Second Amended Petition in the Underlying Suit, at App. 682.
[69] Ex. 27: Plaintiffs' First Amended Petition in the Underlying Suit, at Sections IV-V, at App. 676.
[70] *See Royal Ins. Co. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 644 (5th Cir. 2004) ("Here, Hartford had no duty to defend – and thus cannot be required to pay any of Royal's defense costs – until the underlying suit implicated Harford's policy and the insured tendered the Complaint to Hartford.").

It is well established under Texas law that a duty to defend cannot be triggered unless and until an insured tenders a pleading to the insurer that alleges a claim potentially covered by the policy issued by the insurer.[71]   Gearn's attempt to recover defense costs incurred in February 2011 simply has no arguable legal basis.[72]   To prove an action for bad faith, an insured must establish the insurer denied or delayed payment of the insured's claim when liability was **reasonably clear**.[73]   When, as here, a claim is not covered by an insurance policy, an insurer cannot be liable for breach of good faith and fair dealing.[74]   Moreover, an insurer will not be subject to liability for breach of its duty of good faith and fair dealing if a reasonable basis exists for its actions.[75]   As a matter of law, Homeland did not violate the Texas Prompt Pay Statute or breach any duty of good faith and fair dealing in not paying such fees.   Homeland is therefore entitled to summary judgment on the claims asserting that Homeland is liable for not paying or reimbursing Gearn's attorney's fees incurred in February 2011, as asserted in Counts 3 and 4 of the Live Petition.

---

[71] *Allstate Ins. Co. v. Disability Servs. of the Southwest, Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *Royal Ins. Co. v. Hartford Underwriters Ins. Co.*, 391 F.3d at 644; *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 400 (5th Cir. 1995); *Simco Enters. v. James River Ins. Co.*, 566 F. Supp. 2d 555, 564 (E.D. Tex. 2008); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997).

[72] In the Live Petition, Plaintiffs make no effort to demonstrate how the First Amended Petition could have triggered any duty to defend Gearn under either the Gearn Offshore Policy or the Blue Ribbon Policy, the only policies identified in the Live Petition.

[73] *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 278, 283 (Tex. 1996).

[74] *Lundstrom v. United Serv. Auto. Ass'n-CIC*, 192 S.W.3d 78, 96 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

[75] *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).

**VII.**

**THE ONEBEACON DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS 5, 6, AND 7 BECAUSE HOMELAND IS AN ELIGIBLE SURPLUS LINES INSURER, ALLEN IS A LICENSED SURPLUS LINES AGENT AND PLAINTIFFS CANNOT REWRITE THE POLICIES TO OBTAIN THE RELIEF THEY SEEK**

Knowing that they are not entitled to coverage under the Policies, Plaintiffs make a last-ditch effort at recovery by asserting claims under the Code that have no factual or legal basis. Plaintiffs allege that the OneBeacon Defendants violated Chapter 101 of the Code, which governs Unauthorized Insurance, and Chapter 981, which governs surplus lines insurance. Plaintiffs' claims under Chapter 101 fail because Chapter 101 is entirely inapplicable. It is undisputed that Homeland is an eligible surplus lines insurer,[76] and Allen is a licensed surplus lines agent.[77] It is also undisputed that each held this status at the time the Policies were sold.[78] Plaintiffs' claims under both Chapters also fail because, even if the OneBeacon Defendants violated these Chapters, which they did not, such a violation would not entitle the Plaintiffs to the relief that they seek. A violation of Chapters 101 and 981 prevent an insurer from enforcing a policy as written, but it does not allow an insured to rewrite a policy to cover those who are strangers to the policy.[79]

**A.      Chapter 101 is Entirely Inapplicable**

In Count 5 of the Live Petition, Plaintiffs allege that the Policies were illegally issued because Allen is a surplus lines agent "in name only," and that Allen "never

---

[76] Cernera Aff. ¶3, at App. 100; Riddle Aff. ¶6, at App. 107; Ex. 7: Texas Department of Insurance Company Profile Search Result for Homeland, at App. 120-25.

[77] Walton Aff. ¶8, at App. 11; Ex. 5: Texas Department of Insurance license for Allen, at App. 97; Riddle Aff. ¶5, at App. 107; Ex. 6: Texas Department of Insurance Licensing Search Results for Allen, at App. 117-18.

[78] Walton Aff. ¶6, at App. 11; Cernera Aff. ¶4, at App. 100; Riddle Aff. ¶6, at App. 107; Ex. 5: Texas Department of Insurance license for Allen, at App. 97; Ex. 6: Texas Department of Insurance Licensing Search Results for Allen, at App. 117-18; Ex. 7: Texas Department of Insurance Company Profile Search Result for Homeland, at App. 120-25.

[79] Homeland does not rely upon any exclusions in the Policies for its coverage position. Thus, any violation of Chapters 981 or 101 is simply not material in this case.

acted as a surplus lines agent".  As a result, Plaintiffs claim that the Policies constitute unauthorized insurance that Homeland cannot enforce.  Plaintiffs also assert that the remaining OneBeacon Defendants and the Broker Defendants are liable to the Plaintiffs because they assisted in the procurement of the Policies.  This claim fails because Section 101.201(b) provides an exception to 101.201(a) that indisputably applies here.

Section 101.201(b) provides: "This section does not apply to insurance procured by a licensed surplus lines agent from an eligible surplus lines insurer."[80]  Under Texas law, this exception applies if the insurer presents evidence that the policy was procured by a licensed surplus lines agent, such as Allen, from an eligible surplus lines insurer, such as Homeland, and the insured presents no evidence otherwise.[81]  Allen was a licensed surplus agent at the time each of the Policies was issued, and still is.[82]

Plaintiffs do not dispute that Allen *is* a licensed surplus lines agent, but instead argue that Allen never "functioned" as such.[83]  This allegation is false, but even if Allen never "functioned" as a licensed surplus lines agent, it is irrelevant to whether he *was* a "licensed surplus lines agent," which is all that is required for the exception in Section 101.201(b) to apply.  There is no support for the proposition that a licensed surplus lines agent must be somehow "practicing" or "functioning" to qualify as a licensed surplus agent.  Section 981.203 provides the requirements for becoming a licensed surplus lines agent.  Once an individual such as Allen proves that he meets these

---

[80] Tex. Ins. Code §101.201(b)
[81] *Prodigy Comm. Corp. v. Ag. Excess & Surplus Ins. Co.*, 195 S.W.3d 764 (Tex. App. Dallas 2006), rev'd on other grounds, 288 S.W.3d 374 (Tex. 2009).
[82] Walton Aff. ¶¶ 6,8, at App. 11; Riddle Aff. ¶6, at App. 107; Ex. 5: Texas Department of Insurance license for Allen, at App. 97; Ex. 6: Texas Department of Insurance Licensing Search Results for Allen, at App. 117-18.
[83] Live Petition ¶ 54.

requirements and obtains a license, he is a "licensed surplus lines agent."[84]  Thus, the exception in Section 101.201(b) applies.

The presence of the exception in Section 101.201(b) comports with the general rule that surplus lines insurers should be subject to Chapter 981, not Chapter 101. Texas generally does not allow insurers to practice within its boundaries unless the insurer is authorized to do so; Chapter 101 subjects insurers who practice unauthorized insurance to penalties.  But Chapter 981 allows eligible surplus lines insurers to practice insurance within Texas if they meet certain requirements set forth in that Chapter.  Failure to comply with one of those requirements may subject the carrier to penalties under Chapter 981, but not to penalties under Chapter 101.  The Texas Supreme Court has recognized that violations of the surplus lines statute (Chapter 981) do not trigger penalties for engaging in unauthorized insurance under Chapter 101.[85]  Here, because Homeland is an eligible surplus lines insurer and Allen is a licensed surplus lines agent, Chapter 101 in inapplicable.

## B.   Chapters 101 and 981 Do Not Permit Plaintiffs to Rewrite the Policies

In Count 5, Plaintiffs allege that Homeland is precluded from enforcing any rights or exclusions in the Polices under section 101.201 (a) of the Code, which provides that unauthorized insurance policies cannot be enforced by the insurer issuing such policies.  Similarly, in Count 6, Plaintiffs argue that a diligent effort was not made to place the Policies with admitted carriers and, therefore, the Policies were issued in violation of Section 981.004(a)(1).  Under Section 981.005, a material and

---

[84] Tex. Ins. Code § 981.002(3) (defining "surplus lines agent" as an agent *licensed* under Subchapter E, which contains Section 981.203, to procure an insurance contract from a surplus lines insurer).
[85] *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 89 (Tex. 2006).

intentional violation of Section 981.004 prevents an insurer from enforcing a policy against the insured.  Section 981.005 of the Code provides:

(a)     Unless a material and intentional violation of this chapter or Chapter 225 exists, an insurance contract obtained from an eligible surplus lines insurer is:

(1)     valid and enforceable as to all parties; and
(2)     recognized in the same manner as a comparable contract issued by an authorized insurer.

(b)     A material and intentional violation of this chapter or Chapter 225 does not preclude the insured from enforcing the insured's rights under the contract.

Initially, the OneBeacon Defendants firmly deny any violations of the Code.  But even if a violation occurred exactly as the Plaintiffs allege, the Plaintiffs' available relief is narrow: they are entitled to enforce the policies as written.  They are not entitled to rewrite the Policies to cover insureds that did not purchase the Policies or workers that the insureds did not employ.  This is exactly the holding of *Nautilus Insurance Co. v. Nicky & Claire's Daycare, Inc.*[86]  In *Nautilus*, a daycare, Nicky & Claire's, bought an auto insurance policy from Fireman's Fund.  The policy covered a vehicle that Nicky & Claire's owned, and had a liability limit of $100,000.  The vehicle was in an accident that injured a child in Nicky & Claire's care.  The child's parents sued, and Nicky & Claire's sought coverage for any liability arising out of the suit.  Though the policy had a liability limit of $100,000, Nicky & Claire's sought $300,000 in damages, arguing that the policy they purchased violated the Texas Surplus Lines Statute (Chapter 981) by not providing up to $300,000 in coverage.  Nicky & Claire's cited Section 42.042 of the Texas Human Resources Code, which requires that a childcare license holder "maintain liability insurance coverage in the amount of $300,000 for each occurrence

---

[86] No. EP-08-cv-297-TB, 2009 U.S. Dist. LEXIS 129486 (W.D. Tex. Aug. 13, 2009).

of negligence," and that the policy "cover injury to a child that occurs while the child is on the premises or in the care of the licensed holder."  Nicky & Claire's argued that because the policy violated the statute by not providing $300,000 of coverage, they were entitled to that much in coverage.  The court disagreed.  It stated, "even if Fireman's Fund violated [Chapter 981] by issuing the Policy, the only remedy Nicky & Claire's could seek would be to enforce the Policy. Nicky and Claire's would not be able to rewrite the Policy with a greater liability coverage limit."[87]

The same reasoning applies here.  Plaintiffs' remedy for a violation of Chapter 101 or 981 is to enforce the Policies as written.  But they may not rewrite the Policies. The Policies cover Blue Ribbon and Gearn Offshore only for claims by a Covered Person.  Plaintiffs' claim is tantamount to requesting this Court to rewrite the Policies to provide coverage for Plaintiffs' liability to non-Covered Persons; that is, to a person they did not employ.  This is not the proper relief for a violation of Chapter 101 or 981, as *Nautilus* makes clear.[88]

## VIII.
## CONCLUSION

For all the reasons discussed above, the OneBeacon Defendants are entitled to summary judgment on Counts 1, 3, 4, 5, 6, and 8 as to Blue Ribbon, Gearn Offshore, and Gearn.  Blue Ribbon and Gearn Offshore are not entitled to coverage for a loss that befell another company's employee.  The claims for violations of the Texas Insurance Code are ultimately little more than red herrings, as they do not entitle the

---

[87] *Id.* at 39.
[88] The OneBeacon Defendants' Rule 12(b)(6) Motion to Dismiss offers an additional reason as to why none of the Plaintiffs may bring suit under Chapter 981.  The argument presented in this Section VII.B addresses only why Gearn Offshore, Blue Ribbon, and Gearn will not be entitled to any relief if the Policies are enforced as written.

Plaintiffs to anything more than enforcement of the Policies as written, which leads back to the Plaintiffs' initial problem: there is simply no coverage available here. The alleged violation of Chapter 101 cannot stand because an exception clearly applies that makes Chapter 101 entirely inapplicable. The OneBeacon Defendants therefore respectfully request this Court to enter summary judgment in their favor, declare that they have no liability for coverage under the Policies and no duty to defend or indemnify. The OneBeacon Defendants also respectfully request that the Court award costs and attorney's fees against the Plaintiffs, and grant such other and further relief to which they may be justly entitled.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served to all counsel listed below on this 13th day of June, 2013, via the Court's ECF System and/or certified mail, return receipt requested.:

John H. Lovell
Deborah D. Reeves
Lovell, Lovell, Newsom & Isern, L.L.P.
112 West 8th Ave., Suite 1000
Eagle Centre Building
Amarillo, TX  79101-2314

     and

Mark A. Ticer
4144 North Central Expressway
Suite 1255
Dallas, TX 75204


*Attorneys for Plaintiffs*
Juan C. Hernandez
Hernandez & Browning
8111 LBJ Freeway, Suite 1065
Dallas, TX  75251

     and

Mark A. Ticer
4144 North Central Expressway
Suite 1255
Dallas, TX 75204

*Attorneys for Defendants Consuelo Ayala, Individually and as the Representative of the Estate of Pedro Mejia Beltran and as Next Friend and Natural Mother of Minors, EMA, JYMA and CBM*

W C Bratcher
Mark McBrayer
Crenshaw, Dupree & Milam, L.L.P.
P.O. Box 1499
Lubbock, Texas 79408

     and

Slater C. Elza
Underwood Law Firm, P.C.
145 W. 3rd
Hereford, TX  79045

*Attorneys for Defendant Mark Collier*

Richard E. Schellhammer
Cara D. Kennermer
Goins, Underkofler, Crawford & Langdon
1201 Elm Street
Dallas, Texas 75270

*Attorneys for Defendant Terry M. Ferrell*

Robert G. Chadwick, Jr.
Timothy B. Soefje
Campbell & Chadwick, P.C.
4201 Spring Valley Road
Suite 1250
Dallas, TX 75244

*Attorneys for Defendants Elgin B Allen Jr. and AIM Association Insurance Management, Inc.*


/s/ Michael Keeley
Michael Keeley