**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| MAGNUM MINERALS, L.L.C., MAGNUM BLUE RIBBON FEEDS, INC., GEARN OFFSHORE, INC., and TIM A. GEARN, Individually, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | |
| HOMELAND INSURANCE COMPANY OF NEW YORK, MARK COLLIER, CONSUELO AYALA, Individually and as the Representative of the Estate of PEDRO MEJIA BELTRAN and as Next Friend and Natural Mother of Minors, EMA, JYMA, and CBM, and ELGIN B. ALLEN, Jr., AIM ASSOCIATION INSURANCE MANAGEMENT, INC., TERRY M. FERRELL, ONEBEACON INSURANCE GROUP, ONEBEACON ACCIDENT GROUP, ONEBEACON AMERICA INSURANCE COMPANY, ONEBEACON INSURANCE COMPANY, and TRADERS & GENERAL INSURANCE COMPANY, | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 2:13-cv-00103-J |
| Defendants. | § § | |

**ONEBEACON DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION TO REMAND AND BRIEF IN SUPPORT THEREOF**

MICHAEL KEELEY
State Bar No. 11157800
JOHN R. RIDDLE
State Bar No. 16890200
CARLA CRAPSTER
State Bar No. 24065094
STRASBURGER & PRICE, LLP.
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:   (214) 651-4300
Facsimile:    (214) 651-4330

ATTORNEYS FOR DEFENDANTS HOMELAND
INSURANCE COMPANY OF NEW YORK, ONEBEACON
INSURANCE GROUP, ONEBEACON ACCIDENT GROUP,
ONEBEACON AMERICA INSURANCE COMPANY,
ONEBEACON INSURANCE COMPANY, and TRADERS &
GENERAL INSURANCE COMPANY

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................... 2

II.    FACTUAL BACKGROUND.................................................... 3

III.   ARGUMENT AND AUTHORITIES ....................................... 4

    A.      Background on CAFA ................................................ 4

    B.      The Local Controversy Exception Does Not Apply Because
          Plaintiffs Seek Significant Relief Only From Homeland ............................. 5

          1.     The First Injunction Will Affect Only Homeland ................................. 7

          2.     The Second Injunction Will Affect Only Homeland .......................... 8

          3.     The Third Injunction Should Affect None of the Defendants
                 But Could Cause Homeland Significant Financial Harm and
                 Require the Other Defendants to Make Minute Changes to
                 Their Professional Routines ............................................ 8

          4.     The Fourth Injunction Seeks Only Injunctive Relief, Not
                 Damages, and Like the Third Injunction, Should Affect No
                 Defendants, But Could Cause Homeland Significant
                 Financial Harm and Require the Agent Defendants to Make
                 Minute Changes to Their Professional Routines ............................ 9

    C.      Plaintiffs' Argument that The Local Controversy Exception Applies
          Conflates the Significant Basis Element with the Significant Relief
          Element and Misrepresents Relevant Authority ....................................... 11

    D.      The Small Class Exception Does Not Apply Because There Clearly
          Are More Than 100 Members of the Class ............................................ 12

          1.     There are 117 Insureds "Who Purchased" the Policies at
                 Issue ............................................................... 13

           2.     It is Not Inconsistent to Argue that Magnum Minerals is not a
                 Named Insured, and that all Named Insureds Purchase
                 Coverage ............................................................ 16

          3.     Excluding Insureds with Expired Policies Ignores the Live
                 Petition's Definition of the Purported Class and the Reality
                 that Plaintiffs Seek Relief That Will Affect Insureds With
                 Expired Policies.............................................................. 16

## TABLE OF CONTENTS
### *continued*

**Page**

E.    The Amount in Controversy is Well Over $5 Million ................................. 20

    1.    The Amount in Controversy Exceeds $5 Million Because Plaintiffs Seek to Void Certain Policies Altogether and Void Key Provisions of the Policies ........................................................ 20

    2.    Plaintiffs' Attempts to Disprove the Amount in Controversy are Unavailing .............................................................................. 22

IV.    CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aburto v. Midland Credit Management*,
    No. 3:08-CV-1473-K, 2009 U.S. Dist. LEXIS 67467 (N.D. Tex. July 27, 2009).......... 5

*Broquet v. Microsoft Corp.*,
    No. CC-08-094, 2008 U.S. Dist. LEXIS 58061 (S.D. Tex. July 30, 2008) .......... 17, 18

*Caruso v. Allstate Ins. Co.,*
    469 F. Supp. 2d 364 (E.D. La. 2007) ......................................................................... 5

*Dow v. Agrosciences LLC v. Bates*,
    332 F.3d 323 (5th Cir. 2003) ............................................................................... 21, 24

*Evans v. Walter Industries, Inc.,*
    449 F.3d 1159 (11th Cir. 2006) ............................................................................ 6, 17

*Frazier v. Pioneer Americas, LLC*,
    455 F.3d 542 (5th Cir. 2006) ............................................................................... 5, 12

*Garcia v. Boyar & Miller, P.C.*,
    No. 3:06-cv-1936-D, 2007 U.S. Dist. LEXIS 39072 (N.D. Tex. May 30, 2007) ........ 12

*Hawkins v. Aid Ass'n for Lutherans*,
    338 F.3d 801 (7th Cir. 2003) ............................................................................... 20, 23

*In re Carter*,
    618 F.2d 1093 (5th Cir. 1980) ..................................................................... 16, 17, 18

*Kaufman v. Allstate N.J. Ins. Co.*,
    561 F.3d 144 (3d Cir. 2009) ..................................................................................... 6

*Kearns v. Ford Motor Co.*,
    No. 05-5644, 2005 U.S. Dist LEXIS 41614 (C.D. Cal. Nov. 18, 2005) ...................... 6

*Lowe v. Eltan B.V*,
    No. 9:05-cv-38, 2006 U.S. Dist. LEXIS 97687 (E.D. Tex. Mar. 27, 2006) ............... 14

*Meiman v. Kenton County*,
    No. 10-156-DLB, 2011 U.S. Dist. LEXIS 10251 (E.D. Ky. Feb. 2, 2011) ................ 17

*Mondis Tech., Ltd. v. Chimei Innolux Corp.,*
    822 F. Supp. 2d 639 (E.D. Tex. 2011) ................................................................... 10

## <u>TABLE OF AUTHORITIES</u>
### *continued*

**Page(s)**

*Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc.*,
  655 F.3d 358 (5th Cir. 2011) ................................................................. 4, 5

*PAJ, Inc. v. Hanover Ins. Co.*,
  243 S.W.3d 630 (Tex. 2008) ..................................................................... 19

*Robinson v. Cheetah Transp.*,
  No. 06-0005, 2006 U.S. Dist. LEXIS 82921 (W.D. La. Feb. 24, 2006) ................ 6, 11

*Serrano v. 180 Connect, Inc.*,
  478 F.3d 1018 (9th Cir. 2007) .................................................................. 6

*Waller v. Professional Ins. Corp.*,
  296 F.2d 545 (5th Cir. 1961) ....................................................... 20, 22, 23

*Westfall v. Bevan*,
  No. 3:08-cv-0996-D, 2009 U.S. Dist. LEXIS 4404 (N.D. Tex. Jan. 15, 2009) ......... 14

*Williams v. Bestcomp, Inc.*,
  No. 6:11-cv-00050, 2011 U.S. Dist. LEXIS 110183
  (W.D. La. Sept. 26, 2011) .................................................................. 11, 12

*Williams v. Homeland Ins. Co. of New York*,
  657 F.3d 287 (5th Cir. 2011) ............................................................... 11, 12

## STATUTES

28 U.S.C. § 1332(d), Class Action Fairness Act ("CAFA") ................ 2, 3, 4, 5, 12, 20, 25

TEX. INS. CODE ................................................................. 9, 10, 11, 15

TEX. INS. CODE § 981 ................................................................ 7, 15, 18, 21

## OTHER AUTHORITIES

RANDOM HOUSE UNABRIDGED DICTIONARY 1568 (2d ed. 1993) ........................................ 13

S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S. Rep. No.
  109-14, 41 (2005), reprinted in 2005 U.S.C.C.A.N. 3.............................. 4, 5, 6, 7, 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| MAGNUM MINERALS, L.L.C., MAGNUM BLUE RIBBON FEEDS, INC., GEARN OFFSHORE, INC., and TIM A. GEARN, Individually,<br><br>　　　Plaintiffs,<br><br>v.<br><br>HOMELAND INSURANCE COMPANY OF NEW YORK, MARK COLLIER, CONSUELO AYALA, Individually and as the Representative of the Estate of PEDRO MEJIA BELTRAN and as Next Friend and Natural Mother of Minors, EMA, JYMA, and CBM, and ELGIN B. ALLEN, Jr., AIM ASSOCIATION INSURANCE MANAGEMENT, INC., TERRY M. FERRELL, ONEBEACON INSURANCE GROUP, ONEBEACON ACCIDENT GROUP, ONEBEACON AMERICA INSURANCE COMPANY, ONEBEACON INSURANCE COMPANY, and TRADERS & GENERAL INSURANCE COMPANY,<br><br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>2:13-cv-00103-J |

**ONEBEACON DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**MOTION TO REMAND AND BRIEF IN SUPPORT THEREOF**

Defendants Homeland Insurance Company of New York ("Homeland"),

OneBeacon Insurance Group, LLC (improperly identified by Plaintiffs as OneBeacon

Insurance Group), OneBeacon Accident Group (not a legal entity), OneBeacon America

Insurance Company, OneBeacon Insurance Company, and Traders & General

Insurance Company (collectively, the "OneBeacon Defendants"), file this Response to

Plaintiffs' Motion to Remand (the "Motion") and in support thereof would respectfully show the Court as follows:

## I.
## INTRODUCTION

The OneBeacon Defendants removed this case after Plaintiffs amended their state court lawsuit to allege a serious putative class action that puts hundreds of millions of dollars of insurance coverage at stake.  Homeland is in the business of issuing insurance policies in exchange for carefully calculated premiums.  In calculating those premiums, Homeland, like all insurance companies, identifies the risks that it will cover and those it will not.  Homeland's policies intentionally do not cover many risks for any number of reasons, including that the risk would be too expensive to insure.  The relief that Plaintiffs seek would moot this careful calculus that Homeland undertook in issuing its policies.  They seek to divest Homeland of its right to enforce thoughtfully drafted conditions, limitations and exclusions to coverage, that is, its right to defend itself in coverage claims that may be brought by any or all of a class of 117 insureds.  In addition, they ask the Court to force Homeland to offer insureds a chance to cancel their policies with Homeland and purchase replacement coverage.  In other words, they seek to invalidate the policies altogether.

The relief that Plaintiffs seek for the purported class is broad, severe, and calculated to change the way Homeland does business nationwide.  This is exactly the kind of case that Congress believes belongs in federal court.  The amount in controversy is almost unfathomably high, there are more than 100 putative class members, and the diversity that the Class Action Fairness Act ("CAFA") requires is

present.  Thus, to achieve remand, Plaintiffs must prove by a preponderance of the evidence that an exception to CAFA applies.  They have failed to do so.

## II.
## FACTUAL BACKGROUND

The facts of this case have been set out in detail in previous filings.[1]  Only a brief recitation is necessary here.  The OneBeacon Defendants removed this interstate class action between a group of Texas plaintiffs and non-Texas defendants under CAFA, 28 U.S.C. § 1332(d).  Plaintiffs filed multiple petitions in this case before removal; the latest is the Plaintiffs' Fourth Amended Petition and Class Action Petition (the "Live Petition"). The Live Petition asserts putative class claims on behalf of a group of Texas insureds that purchased policies from Homeland.[2]  Plaintiffs seek significant relief from Homeland, a citizen of New York, and minimal relief, if any, from certain Texas citizens who helped the purported members of the class procure policies from Homeland.

Homeland has carefully reviewed the Live Petition's definition of the purported class and identified the policies that it issued to members of that class.  There are 73 such policies, as the OneBeacon Defendants explained in detail in their Response to Plaintiffs' Second Motion for Leave and Court Intervention to Conduct Expedited Discovery, Expedited Consideration of Federal Jurisdiction, and Stay of this Cause Pending Determination of Federal Jurisdiction (Doc. 29) ("Response to the Motion for

---

[1] There have indeed been many previous filings on the very same issues addressed in the Motion and in this Response.  Plaintiffs filed a motion seeking expedited discovery and a radically shortened briefing schedule (Doc. 14) as well as a motion for "sua sponte" review of whether removal was proper (Doc. 21), both of which included arguments that should have been asserted in a motion to remand.  Plaintiffs' frivolous filings suggest, at best, a flippant and careless attitude unbecoming the seriousness of the relief they purport to seek from Homeland, and, at worst, a sly attempt to ferret out the OneBeacon Defendants' arguments against remand before they had ever filed an actual motion to remand.  Either way, Plaintiffs' behavior has been improper and the OneBeacon Defendants have incurred great cost in responding to their needless motions that have been either summarily denied or withdrawn.

[2] As its name suggests, Homeland is a citizen of New York and not Texas for purposes of diversity of citizenship.  The OneBeacon Defendants have proven that the minimal diversity required by CAFA is present in this case and Plaintiffs do not dispute this fact.

Discovery").  Because Plaintiffs define the purported class as "All Texas Insureds and/or Customers of [Homeland] who purchased" these 73 policies, the OneBeacon Defendants identified and counted all the "Named Insureds" who are covered by those Policies.[3]  There are 117 such insureds.[4]  The amount in controversy in this case is many times the $5 million minimum because Plaintiffs' putative class claims seek to invalidate policies that provide hundreds of millions of dollars in coverage.

### III.
### ARGUMENT AND AUTHORITIES

#### A.    Background on CAFA

Congress enacted CAFA "to allow federal courts to hear more interstate class actions on a diversity jurisdiction basis, and . . . modif[y] the federal removal statutes to ensure that qualifying interstate class actions initially brought in state courts may be heard by federal courts if any of the defendants so desire."  S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S. Rep. No. 109-14, 41 (2005), reprinted in 2005 U.S.C.C.A.N. 3.  Though there are some exceptions to CAFA, the Senate Report that accompanied Congress' issuance of CAFA makes clear that courts should construe each of them narrowly in keeping with Congress' belief that "new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions."  *Id.* at 43.  Consistent with this, the Fifth Circuit has repeatedly held that plaintiffs seeking remand bear the burden of proving that an exception to CAFA applies.  *Opelousas Gen. Hosp.*

---

[3] Live Petition ¶ 30.

[4] *See* Exhibit A attached to the Response to the Motion for Discovery, which is incorporated herein by reference.  This Exhibit consists of the affidavit of Lori Cernera and the relevant portions of each of the 73 insurance policies.  The policies were redacted to remove all but the first initial of the first name of each of the 117 insureds in order to protect the privacy and confidentiality of Homeland's insureds.  Ms. Cernera's affidavit affirms that there are indeed 117 individual named insureds, as demonstrated by the policies attached to her affidavit.

*Auth. v. FairPay Solutions, Inc.*, 655 F.3d 358, 360 (5th Cir. 2011); *Frazier v. Pioneer Americas, LLC*, 455 F.3d 542, 546 (5th Cir. 2006).

Congress meant for courts to read Section 1332(d) "broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." S. Rep. No. 109-14, 43 (2005). The Fifth Circuit adopted this approach, and has stated that the local controversy exception should be construed narrowly, "with all doubts resolved in favor of exercising jurisdiction over the case." *Opelousas Gen.*, 655 F.3d at 360. But the Court need not rely on this rule; there are no doubts to resolve. This is exactly the kind of suit that belongs in federal court under 28 U.S.C. 1332(d). It is a large interstate class action with an amount in controversy well in excess of $5 million.

### B. The Local Controversy Exception Does Not Apply Because Plaintiffs Seek Significant Relief Only From Homeland

Plaintiffs fail to prove that they seek significant relief from a defendant who is a citizen of Texas, a required element of the local controversy exception. 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa). Failure to carry the burden of proof on any element of the local controversy exception forbids remand. *Opelousas Gen.*, 655 F.3d at 361 (failure to prove just one element of local controversy exception requires reversal of the lower court's decision to remand). Plaintiffs seek "'significant relief' from a particular defendant [when] the plaintiffs seek relief from that defendant which amounts to a significant part of the total relief sought." *Aburto v. Midland Credit Management*, No. 3:08-CV-1473-K, 2009 U.S. Dist. LEXIS 67467, at *17 (N.D. Tex. July 27, 2009). Thus, courts compare the relief that plaintiffs seek from different defendants. *See, e.g.*, *Caruso v. Allstate Ins. Co.,* 469 F. Supp. 2d 364, 368-69 (E.D. La. 2007) (whether a

class seeks significant relief from a defendant "is determined by whether the relief sought against that defendant is significant relative to the relief sought against the other co-defendants") (citing *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006)); *Robinson v. Cheetah Transp.*, No. 06-0005, 2006 U.S. Dist. LEXIS 82921, at *8 n.6 (W.D. La. Feb. 24, 2006) ("significant relief" test based on "a comparison of the relief sought between all defendants").

Other circuits follow this same approach of comparing the relief sought from each defendant.  *See, e.g.*, *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 157 (3d Cir. 2009); *Evans*, 449 F.3d at 1167; *Kearns v. Ford Motor Co.*, No. 05-5644, 2005 U.S. Dist LEXIS 41614, at *34-35 (C.D. Cal. Nov. 18, 2005), overruled in part on other grounds, *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021-22 (9th Cir. 2007).  Congress also endorsed the method of comparing the relief sought from various defendants, stating that plaintiffs do not seek "significant relief" from a defendant if the relief sought from that defendant is "just small change" compared to what plaintiffs seek from other defendants.  S. Rep. No. 109-14 at 41 (2005).  In short, courts and Congress agree that the test for whether a plaintiff seeks "significant relief" from any one defendant requires comparing the relief sought from one defendant with the relief sought from the others.

Plaintiffs argue that they seek significant relief from Allen, AIM, Ferrell, and Collier (the "Agent Defendants").[5]  But the Live Petition does not support this claim.  The Live Petition seeks four separate injunctions on behalf of the purported class.[6]  Those injunctions, if granted, will have a significant financial impact on Homeland.  The Agent Defendants, however, would hardly notice these injunctions, which would, at most,

---

[5] Motion at 9.
[6] Live Petition ¶¶ 28, 71.

require them to make minor adjustments to their professional routine, perhaps make a few additional telephone calls here and there.  This pales in comparison, and is "just small change" next to what Plaintiffs demand from Homeland.  S. Rep. No. 109-14, at 41 (2005).

### 1.    The First Injunction Will Affect Only Homeland

The first injunction, which is the crux of the Plaintiffs' claims, seeks to enjoin Homeland "from asserting any contractual defenses or exclusions to coverage under § 981.005(a) of the Texas Insurance Code with respect to policies issued by Homeland, AIM, Allen and Ferrell to Plaintiffs and the class members."[7]  Obviously, this relief solely affects Homeland.  The Agent Defendants have no interest in whether Homeland may defend itself in future coverage disputes.  But this would be a huge blow to Homeland. If the injunction is granted, Homeland will lose its ability to defend coverage claims under any of the 73 policies that were issued to purported class members.  Each of those policies has an *annual* policy aggregate limit of liability of $25 million.[8]  In other words, Homeland has potential liability under each of these 73 policies for $25 million for every year the policies were in effect (for a staggering total in *excess* of $1,825,000,000 because most policies were in effect for more than one year).[9] Homeland's right to defend itself in coverage claims made under those policies is crucial to its business model.  Like all insurers, Homeland requires insureds to take certain steps before it will provide coverage and excludes certain risks from coverage.  Its premiums take those conditions and exclusions into account.  Thus, without those

---

[7] Live Petition ¶ 28.
[8] *See* Exhibit A to Response to Motion for Discovery.
[9] *See* Exhibit B attached hereto at ¶ 6 (Ms. Lori Cernera stating that most of the policies were in effect for over a year).

exclusions and other defenses, Homeland will suffer a significant financial loss; it will have to cover losses that the insureds never paid for and for which it never agreed to provide coverage.   Again, in stark contrast, this injunction will not affect the Agent Defendants.

### 2.    The Second Injunction Will Affect Only Homeland

The second injunction that Plaintiffs request is retrospective and asks that the purported class be allowed to cancel their policies with Homeland and buy replacement policies from an admitted carrier.[10]   The brokers and agents who helped place policies with Homeland have no interest in whether those policies are cancelled.  But Homeland obviously cares a great deal about its contractual relationship with its customers.  The Agent Defendants, on the other hand, are no longer relevant to that contractual relationship.  This injunction will simply not affect them.

### 3.    The Third Injunction Should Affect None of the Defendants But Could Cause Homeland Significant Financial Harm and Require the Other Defendants to Make Minute Changes to Their Professional Routines

The third injunction that Plaintiffs seek is a prospective injunction.   Plaintiffs request that Homeland be enjoined from issuing policies in violation of the Texas Insurance Code, and that the other Defendants (presumably, the Agent Defendants) be required to make a diligent effort to determine whether Homeland may issue a particular policy.[11]   Each of the Defendants have denied that their conduct violated the Texas Insurance Code.    Thus, this "relief" that Plaintiffs seek – an edict requiring all Defendants to comply with the Texas Insurance Code in the future – should not require any Defendant to do anything differently.   But if it did, this relief would fall heavily on

---

[10] Live Petition ¶ 71(b).
[11] Live Petition ¶ 71(a).

Homeland and barely affect the Agent Defendants.  If, as Plaintiffs allege, Homeland is currently issuing policies that the Texas Insurance Code prohibits it from issuing, then forcing it to stop issuing those policies will cause it to suffer financial harm.  It will have to forfeit the premiums it receives in exchange for issuing nonsubscriber policies in Texas in violation of the Texas Insurance Code.  If, on the other hand, the Agent Defendants are forced to "make a diligent effort" to secure coverage for their customers from admitted carriers, they will have to do exactly what the injunction requests: expend additional *effort*.[12]  The injunction suggests that they would have to make a few more phone calls or conduct some additional research and determine whether an admitted carrier could provide coverage.  The Agent Defendants would not have an entire market of customers cut off from them as Homeland would.

> ### 4.   The Fourth Injunction Seeks Only *Injunctive Relief, Not Damages, and Like the Third Injunction, Should Affect No Defendants But Could Cause Homeland Significant Financial Harm and Require the Agent Defendants to Make Minute Changes to Their Professional Routines*

The final injunction that Plaintiffs seek would, just like the third injunction, enjoin Homeland from issuing policies in violation of Section 101.201 and forbid all others who assisted in procuring those policies from providing such assistance in the future without expending additional effort.  Plaintiffs state:

> Additionally, under §101.201(a) of the Texas Insurance Code, all persons who in any manner assisted directly or indirectly in the procurement of these nonsubscriber policies are liable to the Plaintiffs and the class members, including: Homeland, OIG, OIC, AIM, Allen, Ferrell, and Collier and their conduct should also be enjoined.[13]

---

[12] Live Petition ¶ 71(a).
[13] Live Petition ¶ 28.

Plaintiffs now argue for the first time that, by including this sentence, they seek not only an injunction but also damages on behalf of the purported class.[14]  But nowhere in the Live Petition do Plaintiffs allege that any members of the class have suffered any damages.  Further, Plaintiffs have already twice admitted that they do not seek damages on behalf of the class.  In an earlier motion, Plaintiffs admitted that a "review of the relief the Class seeks is purely injunctive in nature, **does not seek any damages from the Defendants**, and does not ask the Defendants to pay a policy benefit."[15]  And in this Motion, Plaintiffs state: "The only policy limits that have been triggered according to the evidence are those under [the policy issued to Gearn Offshore, Inc. and Magnum Blue Ribbon Feeds, Inc.][16] at issue in this case."[17]  In short, the Live Petition and the Plaintiffs' own judicial admissions prove that the class does not seek damages under Section 101.201 against any Defendants.  *Mondis Tech., Ltd. v. Chimei Innolux Corp.,* 822 F. Supp. 2d 639, 643-44 (E.D. Tex. 2011) (judicially binding a party to statements made in a brief).  And, as the Live Petition stands, Plaintiffs *cannot* seek such damages because they have failed to allege that they exist.

Even if Plaintiffs did seek damages on behalf of the class from all Defendants under Section 101.201, which is not the case, the Agent Defendants have no liability thereunder unless Homeland "fails to pay the claim or loss."  TEX. INS. CODE § 101.201(a).  Homeland is first in line for liability; the Agent Defendants need only wait for Homeland to pay.  *Id.*  When comparing the relief sought from various defendants,

---

[14] Motion at 13.
[15] Plaintiffs' Request for Sua Sponte Consideration of the OneBeacon Defendants' Removal and Brief in Support Thereof (Doc. 21) at 4 (emphasis added).
[16] In addition to suing on behalf of the purported class, Plaintiffs bring a separate coverage claim on behalf of these two entities.
[17] Motion at 25.

courts have found it relevant that some defendants are more *able* to pay than others. *See. e.g., Robinson*, 2006 U.S. Dist. LEXIS 10129, at *12 ("whether a putative class seeks significant relief from an in-state defendant includes . . . a determination of . . . each defendant's ability to pay a potential judgment").   Surely the fact that some defendants are more *liable* to pay than others is even more relevant.

### C.   Plaintiffs' Argument that The Local Controversy Exception Applies Conflates the Significant Basis Element with the Significant Relief Element and Misrepresents Relevant Authority

Most of Plaintiffs' argument that the local controversy exception applies relies on a logical fallacy. They repeatedly argue that the Defendants who are Texas citizens engaged in conduct that is a significant *basis* for their clams instead of arguing that Plaintiffs seek significant relief from them.   They contend that the Agent Defendants were the but-for cause of their claims because they procured the policies in violation of the Texas Insurance Code.   (Homeland is, of course, also a but-for cause of Plaintiffs' claims given that it allegedly issued the policies in violation of the Texas Insurance Code.)   This irrelevant argument does not address whether Plaintiffs seek significant *relief* from the Agent Defendants.

In fact, Plaintiffs cite case law discussing the "significant basis" test in support of their argument that the "significant relief" test has been satisfied:   *Williams v. Homeland Ins. Co. of New York*, 657 F.3d 287, 292 (5th Cir. 2011) and *Williams v. Bestcomp, Inc.*, No. 6:11-cv-00050, 2011 U.S. Dist. LEXIS 110183 (W.D. La. Sept. 26, 2011).[18]   These cases hold that where one defendant's conduct is the basis for claims against many defendants, that defendant is a "common denominator" whose conduct is significant. *Williams*, 657 F.3d at 292; *Bestcomp*, 2011 U.S. Dist LEXIS 110183, at *32-33.   But

---

[18] Motion at 10.

critically, neither case holds, as Plaintiffs allege, that a "defendant from which the alleged conduct forms a basis for relief qualifies as one whom significant relief is sought under CAFA local controversy exception."[19]   Indeed, this nonsensical "quote" from *Williams* is language that does not appear in the case at all.   Plaintiffs made it up and included it with quotation marks in the parenthetical following the citation to *Williams.* Not only is this not a quote from *Williams*, it is not an accurate paraphrase of the case's holding.   *Williams* does not hold that a defendant whose conduct is the "common denominator" of all plaintiffs' claims is necessarily a defendant from whom the plaintiffs seek significant relief.   Such a holding would be illogical.   It is easy to envision a scenario where a defendant with limited resources, or whose exposure to liability is small, was the "common denominator" or but-for cause of claims against many other defendants, which essentially is what is alleged here against the Agent Defendants. Section 1332(d)(4)(A)(i)(I) has a "significant relief" element separate from the "significant basis" element for a reason.

### D.   The Small Class Exception Does Not Apply Because There Clearly Are More Than 100 Members of the Class

The "small class" exception applies where the plaintiff seeking remand proves by a preponderance of the evidence that there are fewer than 100 class members.   *Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006) ("[P]laintiffs have the burden to show the applicability of the §§ 1332(d)(3)-(5) exceptions when jurisdiction turns on their application."); *Garcia v. Boyar & Miller, P.C.*, No. 3:06-cv-1936-D, 2007 U.S. Dist. LEXIS 39072, at *11 (N.D. Tex. May 30, 2007) (burden of proving "small class" exception on plaintiffs).   Plaintiffs assert two arguments in support of their contention that there are

---

[19] Motion at 12 (allegedly quoting *Williams*, 657 F.3d at 292).

fewer than 100 class members, both of which strain the Live Petition's definition of the purported class.  First, Plaintiffs harp on the fact that the class includes only insureds "who purchased" a policy.  They apparently contend that only the person who physically interacted with the insurance agent and handed over the premium for the policy counts as a class member.  Second, Plaintiffs argue that the class consists only of insureds that have active or unexpired policies with Homeland, though the Live Petition makes no mention of excluding such insureds from the purported class *and seeks relief* on behalf of insureds with expired policies.  Both arguments are illogical, and Plaintiffs have failed to carry their burden of proving that the class consists of fewer than 100 members.

### 1.   There are 117 Insureds "Who Purchased" the Policies at Issue

Plaintiffs attempt to strain their class definition by arguing that not all Named Insureds on the 73 policies count because it is not clear that all of them "purchased" those policies.  Plaintiffs define the class as "all Texas Insureds and/or Customers of Homeland Insurance Company of New York who purchased Homeland non-subscriber policies from or through" certain persons and entities between January 2005 and the present.  The term "purchase" means "1. to acquire by the payment of money or its equivalent; buy, 2. to acquire by effort, sacrifice, flattery, etc." RANDOM HOUSE UNABRIDGED DICTIONARY 1568 (2d ed. 1993).  In turn, the word "acquire" means "to come into possession or ownership of." *Id.* at 18.  Thus, the term "purchase" means to come into possession or ownership of something by the payment of money or by effort. Common sense dictates that the person making the purchase need not actually be the one to write the check or close the transaction; the purchaser is the one who ends up possessing something through the extension of money or effort.  If the term "purchase" were as limited as Plaintiffs suggest, any time a married couple purchases a home

together, only the spouse actually writing the check is the "purchaser."  This result does not comport with reality.

Common sense is enough to dispel Plaintiffs' argument that some insureds did not come into possession of insurance coverage by extending money or effort.  But there is an even more compelling reason to read the words insureds "who purchased" as including all "Named Insureds" on the 73 policies: Plaintiffs seek relief on behalf of all such insureds.  In construing a complaint, such as the Live Petition, federal courts read the complaint "as a whole" to determine "the gravamen of their allegations."  *Westfall v. Bevan*, No. 3:08-cv-0996-D, 2009 U.S. Dist. LEXIS 4404, *24 (N.D. Tex. Jan. 15, 2009) (holding that a plaintiff failed to present a question of federal law, despite that it had alleged an ERISA violation, because the "complaint as a whole" revealed that the gravamen of the allegations was fraudulent inducement to invest in a specific retirement plan – a state law claim); *See also Lowe v. Eltan B.V*, No. 9:05-cv-38, 2006 U.S. Dist. LEXIS 97687, *65 (E.D. Tex. Mar. 27, 2006) ("The Court must read the complaint as a whole and determine if it 'sounds' in fraud.").  Here, reviewing the Live Petition as a whole, it is plain that Plaintiffs seek relief on behalf of the *insureds* on the 73 policies at issue, and thus, that the purported class consists of these 117 Named Insureds.  The Plaintiffs' retrospective injunction seeks to require Defendants "to notify *insureds* with existing policies," that Homeland will comply with the Texas Insurance Code.[20] Similarly, Plaintiffs prospective injunction seeks to require Defendants to make a diligent effort to secure coverage from a Texas admitted insurer and to present the results of its efforts to "the Texas *insured or customer*."[21]  Indeed, Sections 101 and 981 of the Texas

---

[20] Live Petition ¶ 71(b) (emphasis added).
[21] Live Petition ¶ 71(a) (emphasis added).

Insurance Code, under which Plaintiffs seek relief, pertain to "insureds," not to persons who write checks to insurance companies.

Plaintiffs argue that it makes sense to limit the class to those who worked with the surplus lines agent in the negotiation of and final purchase of a policy (*regardless* of whether that person is an insured).[22]   They argue that only such a person "would expect to be aware of whether the surplus lines agent complied or represented he complied with due diligence requirements." *Id.*  In other words, Plaintiffs argue that the class consists only of those who directly dealt with the surplus lines agent because only such persons would know whether the agent made a diligent effort to obtain coverage from an admitted carrier.  Plaintiffs controlled the scope of the class definition and did not qualify that definition in this manner.  Plaintiffs' current position contradicts the plain language of their own proposed class definition (which makes no mention of "awareness" of whether there was a sufficiently diligent effort to obtain admitted coverage).  Moreover, Plaintiffs' position strains credulity.  Plaintiffs suggest that the person who dealt with the agent was wronged–to the point of being a proper member of a class action–merely by having to interact with someone who failed to comply with a technical requirement of the Texas Insurance Code.

Plainly, Plaintiffs seek relief on behalf of the *insureds* to which Homeland issued policies.  The OneBeacon Defendants have produced evidence (though it is not their burden) proving that there are (conservatively) 117 such *insureds.*  Plaintiffs' arguments that only some of those Named Insureds offered consideration in exchange for insurance coverage, and that only those who interacted with the surplus lines agent "count," are devoid of any merit.

---

[22] Motion at 21-22.

### 2. It is Not Inconsistent to Argue that Magnum Minerals is not a Named Insured, and that all Named Insureds Purchase Coverage

Plaintiffs accuse the OneBeacon Defendants of taking two inconsistent positions: (1) all "Named Insureds" count as class members and (2) Magnum Minerals is not an "insured" on the Blue Ribbon Policy.[23]   In support of this argument, they note that the definition of the term "insured," as used in an arbitration agreement that Homeland did not sign and which is not part of the insurance policy that Homeland issued to Magnum Blue Ribbon Feeds, Inc., might be broad enough to include Magnum Minerals.  Even if this arbitration agreement were relevant to the interpretation of the Blue Ribbon Policy— which it obviously is not—the OneBeacon Defendants' positions would *still* not be inconsistent.  There is no inconsistency in arguing that Magnum Minerals is not a "Named Insured" on the insurance policy that Blue Ribbon purchased, and that all "Named Insureds" on a policy purchased the coverage provided by that policy.

### 3. Excluding Insureds with Expired Policies Ignores the Live Petition's Definition of the Purported Class and the Reality that Plaintiffs Seek Relief That Will Affect Insureds With Expired Policies

Plaintiffs may not stray from their definition of the class in the Live Petition as it existed at the time of removal.  *See In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) ("whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed").  The Live Petition defines the class as "Texas Insureds and/or Customers of Homeland Insurance Company of New York who purchased Homeland nonsubscriber policies from or

---

[23] Motion at 18.

through" certain persons and entities between January 2005 and today.[24]   Plaintiffs attempt to shrink the class size by adding new elements to their definition.  They argue that Named Insureds on expired policies should not count.[25]   But courts have consistently held that a plaintiff's definition of the class controls for purposes of determining the class size.  *See, e.g.*, *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1165-66 (11th Cir. 2006) ("class includes" those encompassed by the complaint's definition of the class); *Meiman v. Kenton County*, No. 10-156-DLB, 2011 U.S. Dist. LEXIS 10251, at *9-10 (E.D. Ky. Feb. 2, 2011) (class included more than 100 persons because the "proposed class definition" encompassed more than 100 persons); *Broquet v. Microsoft Corp.*, No. CC-08-094, 2008 U.S. Dist. LEXIS 58061, at *3-4 (S.D. Tex. July 30, 2008) (refusing to "strain the text of the petition" and find that class size was smaller than the class definition clearly suggested).   Indeed, it is difficult to imagine what, besides the plaintiffs' definition of the class, a court might use to determine a class's size, particularly because the complaint controls for purposes of determining whether removal was proper.  *In re Carter*, 618 F.2d at 1101.

Courts also frown on attempts to strain a class definition in order to shrink it to fewer than 100 members.  In *Broquet*, the U.S. District Court for the Southern District of Texas rejected an argument very similar to Plaintiffs'.  2008 U.S. Dist. LEXIS 58061, at *3-4.   The plaintiffs in *Broquet* sued on behalf of each Microsoft Xbox owner who purchased an Xbox within a period for which Microsoft had issued a recall.  No one disputed that more than 100 people had purchased an Xbox within the recall period.  But the plaintiffs argued that the class *really* consisted only of "those for whom a

---

[24] Live Petition ¶ 30.
[25] Motion at 22.

defective Xbox caused a life-threatening situation." *Id.* at *4. The court found that this interpretation "strain[ed] the text of the petition." *Id.* Under *Broquet*, plaintiffs may not stray from the class definition included in the petition, nor carry their burden of proving that the small class exception applies by offering a "strained" interpretation of the class definition. *See id.* Here, Plaintiffs seek not only to strain the class definition in the Live Petition, but to outright add to it. The Live Petition's class definition makes no mention of active or expired policies, and it is too late for Plaintiffs to amend the definition for purposes of avoiding removal. *In re Carter*, 618 F.2d at 1101.

Moreover, Plaintiffs seek relief that will affect individuals with expired policies just as much as individuals with active policies. They request a prospective injunction barring Homeland from issuing insurance in violation of the Texas Insurance Code.[26] Plaintiffs contend that Homeland injured the purported class by issuing surplus lines policies when coverage from an admitted carrier was available. All 117 insureds suffered this alleged injury, not just those with currently active policies.

More significantly, Plaintiffs seek to enjoin Homeland "from asserting any contractual defenses or exclusions to coverage under § 981.005(a) of the Texas Insurance Code."[27] Critically, because Homeland's potential liability under a policy does not end when the policy expires, this relief will greatly affect insureds with expired policies. There are two full insurance policies in evidence: the Gearn Offshore Policy and the Blue Ribbon Policy.[28] Those policies make clear that the policies at issue here are "occurrence policies," or policies that cover losses resulting from events that

---

[26] Live Petition ¶ 71.
[27] Live Petition ¶ 28.
[28] *See* Exhibit A attached hereto (consisting of the insurance policies that Homeland issued to Gearn Offshore, Inc. and Magnum Blue Ribbon Feeds, Inc.); Exhibit B attached hereto at ¶ 7 (stating that the documents attached as Exhibit A are true and correct copies of those policies).

occurred while the policy was in effect.[29]   Like almost all occurrence policies, the 73 policies require insureds to provide *notice* of a loss within a specific time frame to prevent interminable potential liability.  These policies have a generous time frame for such notice:  three years.[30]  But Homeland faces liability even on policies that expired more than three years ago for two reasons.  First, Texas law forbids an insurer from denying coverage for untimely notice under an occurrence policy unless the insurer was prejudiced by the untimely notice.  *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636-37 (Tex. 2008).  Second, and more importantly, Plaintiffs seek to prevent Homeland from even arguing that an insured reported a claim or loss too late.  The requested injunction would bar Homeland from asserting *all* defenses or exclusions to coverage.[31] The very relief that Plaintiffs seek would allow what the policies attempt to foreclose: potential liability dragging on interminably.  In short, an injunction forbidding Homeland from asserting any defenses or exclusions will be a great windfall to insureds whose policies have expired.

In short, the case law does not allow Plaintiffs to stray from or strain the class definition included in the Live Petition.  Moreover, Plaintiffs obviously seek relief on behalf of insureds with expired policies.  Plaintiffs' efforts to shrink the class size must fail for these two reasons.  Even if this Court is inclined to give some credence to Plaintiffs' arguments, Congress has instructed courts to "err in favor of exercising jurisdiction" where the class size is "unclear" and interpret the "small class" exception

---

[29] Exhibit A attached hereto at App. 026 and 060 (stating that Homeland "will cover losses described in the Policy *occurring during the Policy Period* provided that, and only in so far as, such Losses were reported to us within thirty-six (36) months of the date of such loss") (emphasis added); Exhibit B attached hereto at ¶ 3 (stating that all of the other 71 policies at issue in this suit contain identical language).
[30] *Id.*
[31] Live Petition ¶ 28.

"narrowly."  S. Rep. No. 109-14, at 40.  Plaintiffs' arguments could not withstand even a forgiving analysis, but they certainly do not survive under the lens of skepticism through which Congress requires courts to view arguments supporting exceptions to CAFA.

> ### E.   The Amount in Controversy is Well Over $5 Million
>
> #### 1.   *The Amount in Controversy Exceeds $5 Million Because Plaintiffs Seek to Void Certain Policies Altogether and Void Key Provisions of the Policies*

Plaintiffs seek to invalidate all the exclusions and defenses to coverage that the 73 policies include[32] and to force Homeland to offer its customers a chance to invalidate the policy with Homeland and purchase new coverage from a different insurer.[33]  Under Fifth Circuit law, "when the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Waller v. Professional Ins. Corp.*, 296 F.2d 545, 547-48 (5th Cir. 1961).  In *Waller*, the court applied this principle to hold that, where the validity of an insurance policy is at issue, the amount in controversy is the face amount of the policy.  *Id.*  The Seventh Circuit has applied this rule to hold that where an insured seeks to invalidate an arbitration provision in an insurance policy, the face amount of the policy is the proper measure of the amount in controversy.  *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003).  Plaintiffs seek to nullify a provision of the policies far more significant than an arbitration clause.  They seek to void Homeland's ability to assert *any* contractual defenses or exclusions that it otherwise could assert under the policies.[34]  The amount in controversy here is thus the face amount of the policies – the amount of the liability that Homeland faces if it is unable to defend itself in future

---

[32] Live Petition ¶ 28.
[33] Live Petition ¶71.
[34] Live Petition ¶ 28.

coverage disputes.   This is the value of Homeland's right to assert defenses and exclusions to coverage.   *Dow*, 332 F.3d at 326 (amount in controversy where plaintiff seeks declaratory relief is "value of the right to be protected").   Homeland's potential liability under the policies is the annual aggregate limit of liability: $25 million per policy for *each year* that every one of the policies was in effect.[35]

Plaintiffs also argue that Homeland must give insureds that have surplus lines insurance with Homeland the right to replace that coverage with a policy from an admitted carrier.[36]   The Plaintiffs' demand that Homeland "attempt" to secure coverage from an admitted insurer is really a demand that Homeland actually do so because Plaintiffs also plead that policies from admitted carriers *are available*.[37]   In other words, Plaintiffs do not plead that it is possible that coverage from an admitted carrier is available and that Homeland should confirm whether it is or is not.   They plead that it is available and that Homeland must allow the class members to cancel their policies with Homeland and buy coverage from an admitted carrier instead.

*Waller* holds that where the issue presented is whether a contractual relationship between an insurer and insured should be voided, the face amount of the policy in dispute is the amount in controversy.   296 F.2d at 546-48.   In *Waller*, the court examined a life insurance contract that allowed the customer to borrow money from the company to finance his payment of the premiums.   *Id.* at 546.   The insurance contract contained an internal inconsistency: it listed two conflicting interest rates applicable to

---

[35] Exhibit A to Response to the Motion for Discovery; Exhibit B attached hereto at ¶ 6 (stating that most of the 73 policies have been or were in effect for more than a year).

[36] Live Petition ¶ 71.   As the OneBeacon Defendants have explained in previous briefing, as an out-of-state "surplus lines" insurer, Homeland may not issue insurance policies in Texas unless "the full amount of required insurance cannot be obtained, after a diligent effort" from an in-state or "admitted" carrier. TEX. INS. CODE § 981.004(a)(1).   Plaintiffs allege that Homeland issued policies before a determination was made as to the availability of coverage from an "admitted" carrier.   Live Petition ¶¶ 59-60.

[37] Live Petition ¶ 60.

the insured's debt with the insurance company.  *Id.*  When the discrepancy was finally caught, the insured argued that the entire contract was illegal and should be void.  *Id.* at 547.   The court reasoned that "since the relief sought requires an adjudication of the legal effect of the insurance policy and the policy loan, their values determine the amount in controversy."  *Id.*  In other words, the court found that the face amount of the policy governed for purposes of determining the amount in controversy.  *Id.* at 547-48. Just as the plaintiff in *Waller* argued that the policy was invalid because of an internal inconsistency, here, Plaintiffs argue that the policies Homeland issued are invalid for failure to comply with the Texas Insurance Code.  They seek to cancel the policies altogether and offer insureds an opportunity to buy different coverage.[38]  This will void the contractual relationship between insured and insurer, just like ruling that the plaintiffs sought in *Waller*.  The face amount of the policies governed in *Waller* and should govern here, as well.  As previously noted, the face amounts of the policies are well in excess of $5 million, with each having an annual aggregate limit of $25 million.[39]

### 2.   Plaintiffs' Attempts to Disprove the Amount in Controversy are Unavailing

Plaintiffs make four arguments in support of their contention that the amount in controversy is less than $5 million, all of which suffer from fatal logical flaws.  First, Plaintiffs contend that the face amount of the policies cannot govern because "an invalid contract means neither party can enforce it, and there could not be payment of liability limits where the policies are invalid."[40]  Tellingly, Plaintiffs cite no authority for this point, and it is not the law in the Fifth Circuit.  Rather, where "the validity of a contract . . . is

---

[38] Live Petition ¶ 71.
[39] Exhibit A to Response to Motion to Discovery.
[40] Motion at 24.

called into question in its entirety," it is the face amount of the contract that governs for purposes of determining the amount in controversy.  *Waller*, 296 F.3d at 547-48.

Second, Plaintiffs argue that the cases upon which the OneBeacon Defendants rely "do not involve liability policies which are contingent on the establishment of liability."[41]  Plaintiffs do not explain why this would matter, but perhaps they mean to argue that it does not make sense to measure the amount in controversy by the face amount of a policy when it is uncertain whether there will ever be any liability under that policy.  But such uncertainty is at the heart of *every* insurance policy.  By definition, insurance is a "risk sharing" arrangement in which an insurer agrees to pay the insured *if* something occurs.  In *Waller* and *Hawkins*, the Fifth and Seventh Circuits found that the face amount of a life insurance policy governed for purposes of determining the amount in controversy, despite that the face amount of the policy would not be paid unless the insured died.  *Hawkins*, 338 F.3d at 804-805; *Waller*, 296 F.2d at 546-48.  Indeed, in *Waller*, the insured sought to invalidate the policy just as Plaintiffs do.  296 F.2d at 547.  Thus, if the insured had succeeded, there would have been no policy limits to pay.  Nonetheless, the courts looked to the value of the policies at issue in attempting to put a price on the contractual relationship between the parties, the very nature of which was in dispute.  The same scenario is presented here.[42]

Third, Plaintiffs cite a Fifth Circuit case holding that where a plaintiff seeks a specific amount in damages, that specific amount is—obviously—the amount in

---

[41] Motion at 22.
[42] In addition of course, if any members of the purported class do not purchase a replacement policy, they will be able to take advantage of the injunction barring Homeland from asserting defenses and exclusions, which leaves Homeland exposed to liability for up to the face amount of the policies.  Live Petition ¶ 28.

controversy.[43]   Plaintiffs contend that the OneBeacon Defendants have "judicially admit[ted] that the class does not seek recovery under the 73 policies," and thus, the face amount of the policies cannot govern.[44]  This non sequitur misses the OneBeacon Defendants' point entirely.  It is precisely because the insureds do not seek recovery of a specific amount, but instead seek to invalidate policies altogether, that the face amounts of those policies govern.  Citing a case where recovery of a specific amount was in issue does not address this argument.[45]

Finally, Plaintiffs contend that some of the 73 policies have expired.   As explained on pages 18-19, Homeland has continuing liability under policies that have expired, a fatal flaw in Plaintiffs' argument that "an expired policy does not afford an insured coverage and thus no policy limits are at stake."[46]  An insured in possession of an expired policy could unquestionably benefit from Homeland being stripped of its defenses to coverage.  Indeed, such an insured might benefit most of all, as Homeland could lose its ability to assert any defense relating to the insured's untimely notice.  In any event, Plaintiffs are correct in asserting that only some policies have expired.  Many are still in effect.  For example, of the first fifteen policies that are attached as Exhibit A to the OneBeacon Defendants' Response to the Motion for Discovery, three are still in effect, ten expired within the last three years, and only two expired just over three years ago.[47]  Thus, Homeland *clearly* still has potential liability under thirteen of these fifteen

---

[43] Motion at 24 (citing *Dow v. Agrosciences LLC v. Bates*, 332 F.3d 323 (5th Cir. 2003)).
[44] Motion at 24-25.
[45] The OneBeacon Defendants cite *Dow* only for its statement of the general rule that the amount in controversy when the plaintiff seeks declaratory relief is "the value of the right to be protected or the extent of the injury to be prevented."  332 F.3d at 326.
[46] Motion at 25.
[47] Exhibit B attached hereto at ¶4.

policies.[48]   But even if this Court looks only to the three policies that have not expired (just within this small sample size), the aggregate annual limits of liability are $25 million each, making the amount in controversy in this case at least $75 million.

## IV.
## CONCLUSION

Plaintiffs seek to strip Homeland of its right to assert defenses and exclusions to coverage under policies issued by Homeland, leaving it exposed to liability under both active and expired policies.   They also ask the Court to invalidate the policies that Homeland currently has in place and force Homeland to offer its customers a chance to purchase a new policy.   There are in excess of 100 class members and the amount in controversy easily exceeds $5 million, and would if only *one* policy were at issue. This case fits squarely within the realm of disputes that Congress decided should be heard in federal court.   Plaintiffs offer no arguments to negate this fact, and have failed to carry their burden to demonstrate that any exception to CAFA applies.   They offer only arguments that misconstrue relevant authority and eschew logic.   Respectfully, this Court should deny Plaintiffs' Motion to remand this interstate class action.

---

[48] *See supra* pages 18-19, discussing the Sunset Clause in each of the policies, which gives insureds three years to report losses resulting from events that occurred during the policy period.

Respectfully submitted,


*/s/ Michael Keeley*
MICHAEL KEELEY
State Bar No. 11157800
JOHN R. RIDDLE
State Bar No. 16890200
CARLA CRAPSTER
State Bar No. 24065094
STRASBURGER & PRICE, LLP.
901 Main Street, Suite 4400
Dallas, Texas 75202
Telephone:   (214) 651-4300
Facsimile:    (214) 651-4330

ATTORNEYS FOR DEFENDANTS
HOMELAND INSURANCE COMPANY OF
NEW YORK, ONEBEACON INSURANCE
GROUP, ONEBEACON ACCIDENT GROUP,
ONEBEACON AMERICA INSURANCE
COMPANY, ONEBEACON INSURANCE
COMPANY, and TRADERS & GENERAL
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion has been served on all counsel listed below on this 29th day of July, 2013, via the Court's ECF System and/or electronic mail.

John H. Lovell
Deborah D. Reeves
Lovell, Lovell, Newsom & Isern, L.L.P.
112 West 8th Ave., Suite 1000
Eagle Centre Building
Amarillo, TX 79101-2314

Mark A. Ticer
4144 North Central Expressway
Suite 1255
Dallas, TX 75204

*Attorneys for Plaintiffs and Third-Party Defendant Jason Gearn*

Juan C. Hernandez
Hernandez & Browning
8111 LBJ Freeway, Suite 1065
Dallas, TX 75251

Mark A. Ticer
Law Office of Mark A. Ticer
4144 North Central Expressway
Suite 1255
Dallas, TX 75204

Robert C. Lyon
Robert Lyon & Associates
3301 Century Drive, Suite A
Rowlett, TX 75088

*Attorneys for Defendant Consuelo Ayala, Individually and as the Representative of the Estate of Pedro Mejia Beltran and as Next Friend and Natural Mother of Minors, EMA, JYMA, and CBM*

W C Bratcher
Mark McBrayer
Crenshaw, Dupree & Milam, L.L.P.
P.O. Box 1499
Lubbock, Texas 79408

Slater C. Elza
Underwood Law Firm, P.C.
145 W. 3rd
Hereford, TX 79045

*Attorneys for Defendant Mark Collier*

Richard E. Schellhammer
Cara D. Kennermer
Goins, Underkofler, Crawford & Langdon
1201 Elm Street
Dallas, Texas 75270

*Attorneys for Defendant Terry M. Ferrell*

Robert G. Chadwick, Jr.
Timothy B. Soefje
Campbell & Chadwick, P.C.
4201 Spring Valley Road
Suite 1250
Dallas, TX 75244

*Attorneys for Defendants Elgin B. Allen, Jr. and AIM Association Insurance Management, Inc.*

/s/ Michael Keeley
Michael Keeley