IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MAGNUM MINERALS, L.L.C., MAGNUM BLUE RIBBON FEEDS, INC., GEARN OFFSHORE, INC., and TIM A. GEARN, Individually, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § | No. 2:13-CV-103-J |
| HOMELAND INSURANCE COMPANY OF NEW YORK, MARK COLLIER, CONSUELO AYALA, Individually and as Representative of the Estate of PEDRO MEJIA BELTRAN and as Next Friend and Natural Mother of Minors EMA, JYMA, and CBM, ELGIN B. ALLEN, JR., AIM ASSOCIATION INSURANCE MANAGEMENT, INC., TERRY M. FERRELL, ONEBEACON INSURANCE GROUP, ONEBEACON ACCIDENT GROUP, ONEBEACON AMERICA INSURANCE COMPANY, ONEBEACON INSURANCE COMPANY, and TRADERS & GENERAL INSURANCE COMPANY, | § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

Before the Court is *Plaintiffs' Motion to Remand*, (Doc. No. 46), filed July 8, 2013. Therein, Plaintiffs argue that the Court lacks jurisdiction under the Class Action Fairness Act (CAFA), the sole basis for removal. Plaintiffs allege that Defendants have failed to establish that there is more than $5,000,000 in controversy, as required by CAFA, and alternatively, that the "local controversy exception" and "small class exception" to CAFA apply, both of which divest this Court of jurisdiction. Also before the Court is a related *Motion to Strike Cernera Affidavits*, (Doc. No. 71), filed by Plaintiffs on August 7, 2013, in which Plaintiffs seek to strike the

affidavits of Lori Cernera, "the person in charge of the program through which Homeland Insurance Company of New York ('Homeland') issues nonsubscriber insurance policies in the State of Texas," and as such, the employee who can attest to the fact that the prima facie elements of CAFA are met. For the reasons that follow, *Plaintiffs' Motion to Remand* and *Plaintiffs' Motion to Strike Cernera Affidavits* are DENIED.

## BACKGROUND

The Texas Insurance Code provides that a party seeking insurance in Texas who is unable to obtain coverage for a risk from a licensed Texas insurer may obtain coverage from an insurer not licensed in Texas but who is an "eligible" surplus lines insurer. Defendant Homeland is an unauthorized, but eligible, surplus lines insurer. However, an eligible surplus lines insurer may provide surplus lines insurance only if a "diligent effort" is first made to obtain insurance from an insurer within the state, and only if "the insurance is placed through a surplus lines agent." Tex. Ins. Code § 981.004.

Plaintiffs Magnum Minerals, LLC ("Minerals"), Magnum Blue Ribbon Feeds, Inc. ("Blue Ribbon"), and Gearn Offshore, Inc. ("Gearn Offshore") are related entities managed by Plaintiff Tim Gearn. Because Minerals, Blue Ribbon, and Gearn Offshore all chose not to subscribe to the Texas workers' compensation program, Gearn sought nonsubscriber insurance coverage for all three companies and their employees from Defendant Mark Collier, an insurance agent. Collier in turn contacted Defendant Terry Ferrell to assist with locating a nonsubscriber insurer. Allegedly without seeking nonsubscriber coverage from an authorized Texas insurer first, Ferrell forwarded Homeland's Occupational Injury / Employer's Liability Coverage policy applications to Collier.

After Collier completed the Homeland insurance policy applications on behalf of Gearn, Ferrell relayed them to Defendant Association Insurance Management, Inc. (AIM), whose president, Elgin Allen, is Homeland's Texas surplus lines agent. AIM then procured insurance for Gearn Offshore and Blue Ribbon without seeking coverage from an authorized Texas insurer first. Homeland issued a nonsubscriber policy to Gearn Offshore in 2009 and one to Blue Ribbon in 2010. It never issued a policy to Minerals.

In 2011, a Minerals salt storage silo collapsed and killed Pedro Mejia, a Minerals employee. Consuelo Ayala, representative of Mejia's estate and next friend of three minors,[1] sued all four Plaintiffs (and later others). After initially providing a defense to Ayala's suit, Homeland, through its parent Defendant OneBeacon Insurance Group, told Plaintiffs that Minerals—and therefore Mejia—was uninsured and denied coverage. Plaintiffs then brought suit in state court against Homeland for breach of contract and Collier for negligent procurement. They later added more claims and more defendants.

Relevant to the current motion, Plaintiffs sought class certification in March 2013, of "[a]ll Texas Insureds and/or Customers of Homeland Insurance Company of New York who purchased Homeland nonsubscriber policies from or through Elgin B. Allen, Jr., AIM Association Insurance Management Inc., Terry M. Ferrell, [and the OneBeacon Defendants[2]] . . . during the time period January 2005 to the present." The class-wide allegations are that Defendants (excluding Ayala and the minors) have been violating Chapter 102 and Chapter 981 of the Texas Insurance Code through the issuance of Homeland's surplus lines policies to

---

[1] Ayala and the minors have been added as Defendants to this suit as potential judgment creditors of Plaintiffs.

[2] The "OneBeacon Defendants" (Homeland, OneBeacon Insurance Group, OneBeacon Accident Group, OneBeacon America Insurance Company, OneBeacon Insurance Company, and Traders & General Insurance Company) are related entities of Homeland.

potential class members from 2005 to the present. Specifically, the putative class alleges that the Defendants are violating: (1) Section 101.201 of the Code, which prohibits the issuance of insurance by an unauthorized insurer, unless the policy has been procured by a licensed surplus lines agent from an eligible surplus lines insurer; and (2) Section 981.004, which prohibits the procurement of surplus lines insurance before a diligent search for an authorized insurer willing to cover the risk. Plaintiffs therefore seek injunctive relief prohibiting Defendant Homeland "from enforcing any contractual rights or exclusions to insurance coverage" against any of the class members, as well as prospective and retrospective injunctive relief mandating that all Defendants "actually and expressly make a diligent effort and attempt to secure coverage" from an admitted Texas insurer and "present the results of such efforts and attempts to secure such coverage" to any "Texas insured or customer." On June 10, 2013, Defendants removed Plaintiffs' suit pursuant to CAFA.

## STANDARDS

Enacted by Congress in 2005, CAFA expands diversity jurisdiction over interstate class action lawsuits, granting federal courts jurisdiction where minimal diversity exists between the parties and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Even if these prima facie elements are fulfilled, various exceptions can force remand. As previously noted, Plaintiffs argue that not only have Defendants have failed to establish that there is more than $5,000,000 in controversy, but that the "local controversy exception" and "small class exception" to CAFA apply. The "local controversy exception" requires remand if: (1) greater than two-thirds of the putative class are Texas citizens; (2) at least one defendant from whom significant relief is sought and whose conduct forms a significant basis of the putative class's claims is a Texas citizen; (3) the putative class's principal injuries

occurred in Texas; and (4) no similar class action has been filed against any of the defendants in the last three years. 28 U.S.C. § 1332(d)(4)(A). Alternatively, the Court must remand if the putative class contains fewer than 100 members at the time of removal, an exception that Plaintiffs have deemed the "small class exception." *Id.* § 1332(d)(5)(B). Although "CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction," *Joseph v. Unitrin, Inc.*, No. 1:08-CV-077, 2008 WL 3822938, at *4 (E.D. Tex. Aug. 12, 2008), Plaintiffs carry the burden of proving the applicability of either of the aforementioned exceptions by a preponderance of the evidence. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006). The Fifth Circuit has admonished that doubts as to whether an exception applies are to be resolved in favor of exercising jurisdiction over the case. *Opelousas Gen. Hosp. Auth. v. FairPay Solutions, Inc.*, 655 F.3d 358, 360 (5th Cir. 2011).

### DISCUSSION

As indicated above, as the removing party, Defendants have the burden of proving by a preponderance of the evidence that CAFA's prima facie elements have been met and thus that this Court has jurisdiction. Both parties seem to agree that minimal diversity exists, and thus the only remaining issue is whether Defendants have shown that more than $5,000,000 is in controversy.

### *Amount in Controversy*

The amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation." *Valdez v. Metropolitan Prop. & Cas. Ins. Co.*, 867 F.Supp.2d 1143, 1163 (D.N.M. 2012). "The amount in controversy may be established 'either from the viewpoint of the plaintiff or the viewpoint of the defendant, *and regardless of the type of relief sought (e.g.,*

*damages, injunctive relief, or declaratory relief).'" Rasberry v. Capitol Cnty. Mut. Fire Ins. Co.,* 609 F.Supp.2d 594, 600-01 (E.D. Tex. 2009) (quoting *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 984 (S.D. Cal. 2005)); *see also* Class Action Fairness Act of 2005, S.Rep. No. 109-14, at 42–43 (Feb. 28, 2005), reprinted in 2005 U.S.C.C.A.N. 3, 40-41, 2005 WL 627977 (noting that "a class action seeking an injunction that would require a defendant to restructure its business in some fundamental way might 'cost' a defendant well in excess of [the statutory minimum] . . . , but might have substantially less 'value' to a class of plaintiffs."). As such, in determining the "value of the injunctive relief that the class demands," the "cost of prospective relief cannot be ignored in the calculation of the amount in controversy." *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 274 (7th Cir. 2011).

Part of the injunctive relief that Plaintiffs seek on behalf of the putative class is an injunction prohibiting Defendant Homeland "from enforcing any contractual rights or exclusions to insurance coverage" against any of the class members. Chapters 102 and 981of the Texas Insurance Code, those chapters under which the class members would proceed, specifically provide for insurance policies to be enforced against the insurer according to their terms while precluding the insurer from exercising any contractual defenses. Because the relief sought in this regard involves the class members being able to exclusively enforce the contract, Homeland's "*obligation to pay* is at issue, and the amount in controversy must be measured by the value of the [potential] claim[s]" against Homeland. *Rasberry*, 609 F.Supp.2d at 601. However, the putative class seeks not only to enjoin Homeland from enforcing its contractual rights, but also asks for a injunction requiring Defendants to "attempt[ ] to secure coverage for the currently-insured nonsubscriber[s] with admitted insurers . . . as an alternative to the Homeland policies that currently provide them with coverage." Assuming authorized Texas insurers are available to

Page 6 of 14

provide the same coverage, Plaintiffs have also placed the validity of the class members' insurance contracts in question. When the validity of a policy is in dispute, the face value, or policy limits, of that policy is a proper measure of the amount-in-controversy." *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003); *Rasberry*, 609 F.Supp.2d at 601. Accordingly, this Court will look to the limits of the relevant insurance policies in determining the amount in controversy.

"'The [district] court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction.'" *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 817 (5th Cir. 2007) (quoting *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996)). Defendants have proffered an affidavit by Lori Cernera, "the person in charge of the program through which Homeland Insurance Company of New York ('Homeland') issues nonsubscriber insurance policies in the State of Texas," in support of their contention that over $5,000,000 is in controversy. In her affidavit, Cernera attests to the fact that there are seventy-three[3] relevant "nonsubscriber insurance policies issued in the State of Texas by Homeland through Terry M. Ferrell ('Ferrell') and Elgin B. Allen ('Allen') or AIM Association Insurance Management, Inc. ('AIM')." Counting both the "named insureds" and "additional insureds" on each policy, Cernera concludes that there are 117 insureds on the policies, all of whom constitute the putative class. Additionally, she notes that "[e]ach of the [73] Policies has a per-insured limit of liability of at least $1 million." Defendants have also provided the Declarations pages from these seventy-three policies, indicating the policy limits for each policy, in support of its case for federal jurisdiction.

---

[3] Although Cernera originally claimed there were seventy-seven policies, upon subsequent review of the insurance policies, she found that there were only seventy-three, and provided subsequent affidavits clarifying the earlier mistake.

As previously mentioned, Plaintiffs have moved to strike the various affidavits submitted by Cernera, as well as the Declarations pages from the seventy-three policies. Plaintiffs argue that Federal Rule of Evidence 106 prohibits Defendants from redacting the insureds' names and addresses from the Declarations pages, or otherwise not providing the policies in their entirety, and asks this Court to draw an adverse inference as a result. Additionally, Plaintiffs contend that the Cernera affidavits should be struck "for lack of personal knowledge . . . and the Best Evidence Rule."

As an initial matter, Rule 106 does not apply here "by analogy," as Plaintiffs suggest. Further, given that the Declarations pages indicate Homeland as the insurer and Elgin Allen as the surplus lines agent, in addition to indicating the policy limits, the dates of effectiveness and expiration, and the premium amounts for each policy, it is unclear what the insureds' names or addresses, or even the entirety of the policies, will offer that "in fairness ought to be considered at the same time." Fed. R. Evid. 106. Accordingly, there is no reason to strike the Declarations pages, or draw any adverse inference therefrom. Turning to the Cernera affidavits, it appears that Cernera does in fact have personal knowledge of the policies at issue. She states that she has overseen this program since its inception and that she is familiar with all seventy-three nonsubscriber policies issued by Homeland in Texas since 2005. *See Stephenson*, No. SA:12-CV-01081-DAE, 2013 WL 3146977, at *5 (W.D. Tex. June 18, 2013) (citing several cases with similar holdings and concluding that the affidavit of the insurance company's vice president, who attested to the amount of premiums paid by insureds, was sufficient to prove the amount in controversy, given that he "personally deal[t] with the administration and calculation of premiums" as part of his position); *Williams v. Bestcomp, Inc.*, No. 6:11-CV-00050, 2011 WL 4499427, at *4–5 (W.D. La. Sept. 26, 2011) (finding an affidavit to be admissible evidence

regarding citizenship of the class members, since the affidavit was based on the personal knowledge of the affiant, who "made a personal review of the addresses to which her employer mailed class notices in related class actions."). Additionally, the Best Evidence Rule is likewise inapplicable, especially when one considers that Defendants have in fact provided the Declarations pages of the insurance policies, to which Cernera refers in her affidavit. Accordingly, Plaintiffs' *Motion to Strike Cernera Affidavits* is DENIED.

The evidence provided by Defendants shows that there are 117 insureds on the "nonsubscriber insurance policies issued in the State of Texas by Homeland through Terry M. Ferrell ('Ferrell') and Elgin B. Allen ('Allen') or AIM Association Insurance Management, Inc. ('AIM')." "Each of the [73] Policies has a per-insured limit of liability of at least $1 million." Defendant has therefore proved by a preponderance of the evidence that there is more than $5,000,000 in controversy. Once "the removing defendant . . . prove[s] . . . that the amount in controversy equals or exceeds the jurisdictional amount," *Stephenson*, 2013 WL 3146977, at *4 (quoting *Berniard v. Dow Chem. Co.*, 481 F. App'x 859, 862 (5th Cir. 2010)), the burden then switches to the plaintiff to present evidence that, to a "legal certainty," the class claim falls below the $5,000,000 jurisdictional amount. *Stephenson*, 2013 WL 3146977, at *6 (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995)) (noting that the "legal certainty" standard generally requires a plaintiff to "file a binding stipulation or affidavit limiting damages or otherwise show that there is no possibility of recovering in excess of the minimum jurisdictional amount."). This, Plaintiffs have failed to do. As such, the Court finds that the prima facie jurisdictional elements have been met.

### *Local Controversy Exception*

Although Defendants have shown by a preponderance of the evidence that there is minimal diversity among the parties and that there is $5,000,000 in controversy, remand is nonetheless mandatory if Plaintiffs can show by a preponderance of the evidence that either the "local controversy exception" or the "small class exception" applies. The "local controversy exception" dictates that "[a] district court shall decline to exercise jurisdiction" if: (1) greater than two thirds of the members of the putative class are citizens of the state in which the action was filed; (2) at least one defendant is a defendant from whom members of the putative class seek significant relief, whose alleged conduct forms a significant basis for the claims asserted by the proposed class, and who is a citizen of the state in which the action was originally filed; (3) the principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of the instant action. 28 U.S.C. § 1332(d)(4)(A). Of all the "local controversy exception" elements, the parties dispute only whether the proposed class seeks "significant relief" from at least one Texas defendant.

Collier, Ferrell Allen, and AIM are the Texas Defendants. Plaintiffs allege that the putative class seeks significant relief from them all—and particularly from Allen and AIM—in the form of damages and injunctions. In response, Collier contends that because the putative class fails to state a claim, they cannot seek *any* relief—let alone significant relief—from any Texas defendant. He argues that, based on Plaintiffs' allegations in their complaint, neither Section 101.201(a) nor Chapter 981 of the Texas Insurance Code provides a cause of action here. Similarly, the OneBeacon Defendants assert that the putative class only seeks significant relief

from Homeland, a New York Defendant. "[W]hether a class seeks 'significant relief' against a defendant is determined by whether the relief sought against that defendant is significant relative to the relief sought against the other codefendants." *Caruso v. Allstate Ins. Co.*, 469 F.Supp.2d 364, 368 (E.D. La. 2007) (quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006)). Logic therefore dictates "that if a plaintiff has not stated a claim against a certain defendant, that defendant cannot be liable for 'significant relief' and cannot be considered a 'significant' defendant." *Stephenson*, 2013 WL 3146977, at *8.

Although courts generally afford plaintiffs the opportunity to cure pleading deficiencies when considering an argument for failure to state a claim, when addressing a motion to remand, "the controlling pleading is the viable one at the time of removal." *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, No. H-09-3828, 2010 WL 1996596, at *5 (S.D. Tex. May 17, 2010) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939)). As noted above, Plaintiffs first allegation is that the Texas Defendants, among others, are liable under §101.201(a) of the Texas Insurance Code "for the full amount of a claim or loss under the terms of the contract if the unauthorized insurer fails to pay the claim or loss," as the Texas Defendants "assisted directly or indirectly in the procurement of these nonsubscriber policies." However, subsection (b) makes explicit that subsection (a) "does not apply to insurance procured by a licensed surplus lines agent from an eligible surplus lines insurer . . . ." Tex. Ins. Code. §101.201(b). Although Plaintiffs now contend there is a factual dispute as to whether Allen, a licensed surplus lines agent, actually "procured" the class members' policies, their pleading at the time of removal is controlling. *Plaintiffs' Fourth Amended Petition and Class Action Petition* repeatedly references Homeland as an eligible surplus lines insurer and Allen as the surplus lines agent who "*placed* 100% of all 'non-subscriber' policies with Homeland."

Plaintiffs have therefore specifically alleged that the Defendants, including the Texas Defendants, fall under the exception provided for in the statute. Accordingly, whether the Court utilizes the federal pleading standard or the Texas pleading standard is immaterial,[4] as under both standards, Plaintiffs have failed to state a claim in their *Fourth Amended Petition* for liability under §101.201(a). Thus, "significant relief" is not being sought from a Texas Defendant under this chapter.

Plaintiffs also seek relief from the Texas Defendants under Chapter 981 of the Texas Insurance Code. Specifically, Plaintiffs ask for prospective and retrospective injunctive relief requiring the Texas Defendants to "actually and expressly make a diligent effort and attempt to secure coverage for the nonsubscriber . . . from a Texas admitted insurer" and to "present the results of such efforts . . . to the Texas insured or customer," "as an alternative to the Homeland policies." The putative class members also claim that, due to the "material and intentional violation of Chapter 981," "Homeland should be enjoined from asserting any contractual defenses or exclusions to coverage under §981.005 of the Insurance Code." Assuming the putative class prevails on its Chapter 981 claims, it can hardly be said that the injunctive relief sought from the Texas Defendants is "significant" when compared with the monetary relief sought against Homeland, a New York Defendant. *See Robinson v. Cheetah Transp.*, No. Civ.A 06-0005, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006) ("[W]hether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment."). As such, because Plaintiffs have not proven by a preponderance of the evidence that they are

---

[4] Courts dispute which pleading standard is appropriate to use when considering failure-to-state-a-claim arguments in the context of removed cases. *See, e.g., Edwea, Inc. v. Allstate Ins. Co.*, No. H-10-2970, 2010 WL 5099607, at *2-6 (S.D. Tex. Dec. 8, 2010).

seeking "significant relief" from any Texas Defendant, the "local controversy exception" does not apply.

### *Small Class Exception*

Plaintiffs finally allege that the "small class exception" applies, because "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. 1332(d)(5)(B). In their latest petition, Plaintiffs define the putative class as "All Texas Insureds and/or Customers of Homeland Insurance Company of New York who purchased Homeland nonsubscriber policies from or through" Allen, AIM, Ferrell, and the OneBeacon Defendants from January 2005 to the present. The OneBeacon Defendants presented evidence suggesting that there are 117 members of the putative class, because there are 117 named insureds in the 73 Texas nonsubscriber policies that Homeland issued from 2005 to the present. All Texas citizens who are named insureds fall into the category of "Texas Insureds"—unless, as Plaintiffs implicitly argue, the "and/or" in their definition actually means "and." The Court will not adopt Plaintiffs' argument that only "customers" or "purchasers," *i.e.*, the individuals who actually paid Homeland for nonsubscriber coverage regardless of the number of named insureds in each policy, fall into their definition. To the extent that the definition plaintiffs drafted is unclear, it will be construed to give effect to the "or." After reviewing Cernera's affidavits and the 73 Declarations pages, the Court finds that Plaintiffs have not carried their burden of showing that there are fewer than 100 members of the putative class. Accordingly, the "small class exception" does not apply to the present case.

### CONCLUSION

As detailed above, Defendants have met their burden of showing that there is minimal diversity among the parties and that the amount in controversy reaches the jurisdictional

threshold. Further, Plaintiffs have failed to show that either the "local controversy exception" or the "small class exception" applies. As such, *Plaintiffs' Motion to Remand*, (Doc. No. 46), is DENIED, and as indicated above, *Plaintiffs' Motion to Strike Cernera Affidavits*, (Doc. No. 71), is also DENIED.

It is SO ORDERED.

Signed this the 5th day of September, 2013.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE